Charles H. KUIPER, Sr., Mae E. Kuiper, and Charles A. Kuiper, Jr., d/b/a Charles H. Kuiper & Son Farms, Plaintiffs–Appellants,

v.

AMERICAN CYANAMID COMPANY, Defendant–Appellee.

Nos. 96–1647, 97–1657.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1997.

Decided Dec. 5, 1997.

---

**658**

Robert H. Bichler (argued), JoAnne Breese-Jaeck, Hostak, Henzl & Bichler, Racine, WI, for Plaintiffs–Appellants.

Lawrence S. Ebner (argued), McKenna & Cuneo, Washington, DC, Winthrop A. Rockwell, John P. Mandler, Faegre & Benson, Minneapolis, MN, Kenneth B. Ness, John M. Filachek, Terschan, Steinle & Ness, Milwaukee, WI, for Defendant–Appellee.

Before CUDAHY, FLAUM, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

This appeal requires us to decide whether the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136-136y, preempts state law claims alleging that a pesticide manufacturer was negligent and made false representations in marketing and promoting its product. The district court entered summary judgment for the defendant manufacturer, holding that FIFRA preempted the plaintiffs' claims and, in the alternative, that the state statute of limitations barred plaintiffs' statutory claim. We affirm.

## I. Background

In the mid–1980s, American Cyanamid Corporation manufactured and marketed an herbicide named "SCEPTER." Pursuant to FIFRA, American Cyanamid registered SCEPTER with the Environmental Protection Agency (EPA), and EPA approved the SCEPTER label submitted by American Cyanamid.[1] The label contained a section on "Rotational Crop Restrictions" that told farmers how soon they could plant various crops on fields that had been treated with SCEPTER. Of particular significance for this case, the label stated that corn could be

---

1. FIFRA prohibits the sale of unregistered pesticides. 7 U.S.C. § 136a(a). To register a pesticide, manufacturers must submit to EPA "a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use," 7 U.S.C. § 136a(c)(1)(C), as well as supporting data, including "a full description of the tests made and the results thereof upon which the claims are based." *Id.* § 136a(c)(1)(F).

After reviewing the submitted information, EPA registers the pesticide if the following criteria are met:

(A) its composition is such as to warrant the proposed claims for it;
(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;
(C) it will perform its intended function without unreasonable adverse effects on the environment;
(D) when used in accordance with widespread and commonly recognized practices it will not generally cause unreasonable adverse effects on the environment.

Id. § 136a(c)(5).

planted eleven months after the last application of SCEPTER.[2]

Charles H. Kuiper, Sr., Mae Kuiper, and Charles A. Kuiper, Jr., are farmers in Racine, Wisconsin. In 1987 and 1988, the Kuipers used SCEPTER to control weeds in their soybean fields. The Kuipers bought the herbicide from Donald Spangenberg, an independent dealer in agricultural supplies. Spangenberg told the Kuipers that SCEPTER was safe for follow corn.[3]

The Kuipers applied SCEPTER to their soybean fields in 1987 and planted corn on those same fields following the soybean harvest. Although they had waited eleven months after the last application of SCEPTER to plant their follow corn, as directed by the label, the 1988 corn crop did not do well. At the Kuipers' request, Donald Spangenberg came to inspect the fields, and the Kuipers also discussed the problem with an American Cyanamid representative.

In 1988, the Kuipers again applied SCEPTER to their soybean fields, and again their follow corn (the 1989 corn crop) grew poorly. The Kuipers complained to American Cyanamid for the second time, and the company admitted that it had received complaints from other farmers about damage to follow corn caused by SCEPTER. In December 1989, the Kuipers submitted a damage claim to American Cyanamid asserting their belief that SCEPTER had stunted their 1988 corn crop. In 1990, the Kuipers and American Cyanamid negotiated a settlement agreement. Although the parties discussed both the 1988 and 1989 crops, the final settlement compensated the Kuipers only for damages to the 1989 crop. The Kuipers continued to press American Cyanamid to pay damages for the 1988 crop until American Cyanamid, in a letter dated April 10, 1990, expressly denied them any further compensation.

The Kuipers finally filed suit against American Cyanamid in Wisconsin state court on April 30, 1993. Their complaint included a common-law negligence claim, a statutory fraudulent representation claim, and a request for punitive damages. American Cyanamid removed the case to the district court on diversity grounds, and the court entered summary judgment in favor of the defendant. The district court held that FIFRA preempts the Kuipers' claims and, in the alternative, that the three-year limitations period for statutory fraudulent representation claims had expired.

We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the Kuipers and drawing all reasonable inferences in their favor. *Maier v. Lucent Technologies, Inc.,* 120 F.3d 730, 734 (7th Cir. 1997).

## II. Statute of Limitations

We start with the statute of limitations issue. We agree with the district court that the Kuipers filed their statutory claim for fraudulent representation after the three-year limitations period had expired. Wis. Stat. § 100.18(11)(b). The allegedly fraudulent representation in this case occurred in 1987, when the Kuipers first purchased SCEPTER after being told it was safe for follow corn. However, the Kuipers did not file suit until April 30, 1993. The Kuipers contend that during the limitations period they did not have knowledge of American Cyanamid's wrongdoing sufficient to support a claim for fraudulent representation. They assert that American Cyanamid knew that SCEPTER was damaging follow crops throughout Wisconsin, but the company concealed this fact by resisting the discovery process in a trial involving similar claims to

---

**2.** The pertinent part of the label read as follows:

ROTATIONAL CROP RESTRICTIONS

The following rotational crops may be planted after applying SCEPTER at recommended rates in soybeans:

1. Four months after last SCEPTER application:
   Small Grains
   Rice

2. Eleven months after last SCEPTER application:

| | |
|---|---|
| Corn | Grain sorghum |
| Cotton | Peanuts |
| Edible beans | Tobacco |

**3.** A "follow crop" is the crop that a farmer plants in a field following the previous planting season.

those asserted by the Kuipers in this case. *See Gorton v. American Cyanamid Co.*, 194 Wis.2d 203, 533 N.W.2d 746 (1995) (affirming American Cyanamid's liability to a Wisconsin farmer after SCEPTER damaged the farmer's follow corn), *cert. denied*, — U.S. —, 116 S.Ct. 753, 133 L.Ed.2d 701 (1996). Had American Cyanamid's guilty knowledge come to light earlier, the Kuipers argue, they would have been able to sue in a timely fashion. The Kuipers ask that we apply equitable principles to extend the limitations period in this case.

The record demonstrates, however, that the Kuipers had sufficient information to file suit within the limitations period, independent of any information discovered during the *Gorton* litigation. The Kuipers read the rotational crop restrictions on the label; they heard Donald Spangenberg's statement that SCEPTER is safe for follow corn; they observed damage suffered by their corn in two successive years following application of SCEPTER; and they even went so far as to approach American Cyanamid about SCEPTER's possible role in damaging their corn. The Kuipers suspected SCEPTER damage at least as early as December 1989, when they filed a claim with American Cyanamid for compensation for their 1988 crop. They also discussed the 1988 crop as part of their 1990 settlement negotiations, and they continued to press for reimbursement for the 1988 crop until they received American Cyanamid's letter, dated April 10, 1990, refusing their requests for compensation. In short, although the Kuipers may have been unaware at first that American Cyanamid knew SCEPTER could damage follow corn, the Kuipers had enough information to bring suit for fraudulent representation within the limitations period.

■ We also disagree with the Kuipers' contention that filing suit based on the information they had available to them within the limitations period would have violated Wisconsin's prohibition against frivolous suits. The standard under Wisconsin law is as follows:

[A claim is frivolous] if there is no set of facts which could satisfy the elements of the claim, or if the party or attorney knows or should know that the needed facts do not exist or cannot be developed. That is, if the attorney knows or should reasonably know that the facts necessary to meet the required elements of an allegation are not present and cannot be produced, then the attorney has no cause of action.

*Stern v. Thompson & Coates, Ltd.*, 185 Wis.2d 220, 517 N.W.2d 658, 667 (1994) (citation omitted). Contrary to the Kuipers' suggestion, we do not interpret this standard to mean that plaintiffs must have in hand all the information necessary to prove their claims before they may file suit; such a reading would give no role to the discovery process in collecting evidence—such as the extent of a defendant's guilty knowledge—that is currently in the possession of the opposing party. As discussed, the Kuipers had ample cause to believe, within the limitations period, that a set of facts indicating fraudulent representation by American Cyanamid existed or could be developed. Accordingly, we affirm the district court's holding that the statute of limitations bars the Kuipers' statutory claim for fraudulent representation.

■ The Kuipers' remaining negligence claim and request for punitive damages allege that American Cyanamid "was negligent regarding SCEPTER in that, notwithstanding contrary representations by it, defendant ... knew or should have known that SCEPTER is likely to carry over to the following year's crops and adversely affect them," and furthermore, that American Cyanamid "acted in reckless disregard" of the Kuipers' rights. Plaintiff's Complaint at 3. These claims, which seem to overlap to some extent with the Kuipers' statutory fraudulent representation claim, are not subject to the three-year limitations period of § 100.18. Instead, they are subject to a six-year limitations period. Wis. Stat. § 893.52. Accordingly, we must determine whether these claims are preempted by FIFRA.

### III. FIFRA Preemption

The Kuipers contend that their claims fall outside the range of state-law causes of action that are preempted by FIFRA. They argue that FIFRA preempts only state-law claims that directly challenge the product

label; therefore, FIFRA does not preempt their complaint that American Cyanamid was negligent in making *off-label* misrepresentations regarding SCEPTER. Furthermore, if their claims are construed as direct challenges to the label, the Kuipers suggest that their claims would still survive preemption because the label would then have to be deemed misbranded. For the reasons given below, we reject these arguments and conclude that FIFRA preempts the Kuipers' causes of action. Before engaging in this discussion, however, we must address the threshold question of whether the FIFRA preemption issue is open to resolution by this court.

### A.

■ The Kuipers argue that we should not address the merits of the preemption issue because *Gorton v. American Cyanamid Co.*, 194 Wis.2d 203, 533 N.W.2d 746 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 701 (1996), has issue preclusive effect. In *Gorton*, a Wisconsin farmer successfully sued American Cyanamid for negligent misrepresentation after SCEPTER damaged his follow corn. The Wisconsin Supreme Court ruled that FIFRA did not preempt the *Gorton* plaintiff's suit.

The Kuipers, relying primarily on *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 82, 104 S.Ct. 892, 896–97, 79 L.Ed.2d 56 (1984), and *Marx v. M & I Bank*, 17 F.3d 1012, 1014 (7th Cir.1994), argue that we are required to give Gorton the same full faith and credit that it would receive in Wisconsin courts under Wisconsin law. This argument raises thorny questions about whether *Migra* requires a federal court to abide by a state court's decision on the issue of federal preemption of state-law causes of action, or whether an implied exception exists to the Full Faith and Credit Act, 28 U.S.C. § 1738, that would nullify issue preclusion here. See *Matsushita Elec. Indus. Co. v. Epstein*, —— U.S. ——, ——, 116 S.Ct. 873, 878, 134 L.Ed.2d 6 (1996) (discussing the possibility of implied exceptions to the Full Faith and Credit Act). We need to decide this difficult issue, however, only if we first conclude that *Gorton* would

have issue preclusive effect under state law. *Id.*; *Migra*, 465 U.S. at 82, 104 S.Ct. at 896–97. Because *Gorton's* holding on preemption would not have issue preclusive effect on the Kuipers' claims under Wisconsin law, we reject the Kuipers' contention that we are bound by *Gorton*.

■ Wisconsin permits nonmutual offensive collateral estoppel only in cases in which issue preclusion would meet a "fundamental fairness" standard. *Michelle T. v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327, 331 (1993). Under this fundamental fairness test, issue preclusion is inappropriate here for two reasons. First, the Kuipers' claims involve different alleged misrepresentations than those at issue in *Gorton*, and, as discussed infra, FIFRA preemption analysis turns in part on how far the particular alleged misrepresentations stray from the information contained in the product label. See *State ex rel. Flowers v. Department of Health and Soc. Serv.*, 81 Wis.2d 376, 260 N.W.2d 727, 734 (1978) (issue preclusion applies "where the controlling facts . . . remain unchanged") (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 599, 600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948)) (emphasis omitted). Second, as also discussed *infra*, *Gorton* conflicts with other FIFRA preemption cases. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) ("Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."). Thus, *Gorton* does not have issue preclusive effect on this case, and we must address the merits of the FIFRA preemption question.

### B.

■ The Federal Insecticide, Fungicide, and Rodenticide Act provides that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). Because this express preemption provision "provides a reliable indicium of congressional intent with respect to state authority," *see Freightliner Corp. v. Myrick*, 514 U.S. 280,

288, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995) (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (internal quotation omitted)), there is no need to engage in any implied preemption analysis. *See Medtronic, Inc. v. Lohr,* —— U.S. ——, —— – ——, 116 S.Ct. 2240, 2250–51, 135 L.Ed.2d 700 (1996); *Freightliner,* 514 U.S. at 288–90, 115 S.Ct. at 1488; *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2617–18. Our task is to "identify the domain expressly pre-empted" by the statutory language, *Medtronic,* at ——, 116 S.Ct. at 2250 (quoting *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618), by determining whether the legal duty that is the predicate of the plaintiffs' state law damages actions constitutes a "requirement for labeling or packaging in addition to or different from those required under [FIFRA]." *See Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621–22 (1992) (opinion of Stevens, J., joined by Rehnquist, C.J, and White and O'Connor, JJ.); 505 U.S. at 531–32, 112 S.Ct. at 2625–26 (opinion of Blackmun, J., joined by Kennedy and Souter, JJ.) (holding that the preemptive scope of the Federal Cigarette Labeling and Advertising Act and the Public Health Cigarette Smoking Act is governed entirely by the language of their express preemption provisions).

■ We have previously held that FIFRA preempts state common-law actions for labeling and packaging defects regarding products, like SCEPTER, that are regulated by FIFRA. *See Shaw v. Dow Brands,* 994 F.2d 364, 371 (7th Cir.1993) (FIFRA preempts state law failure to warn claim). Our sister circuits agree that FIFRA preempts state law claims that directly challenge the product label itself. *Grenier v. Vermont Log Buildings, Inc.,* 96 F.3d 559, 563–65 (1st Cir.1996) (failure to warn claim; affirmative misstatement/breach of express warranty claim; misdesign or manufacture claim based solely on failure to warn); *Welchert v. American Cyanamid Inc.,* 59 F.3d 69, 71–73 (8th Cir. 1995) (express warranty claim); *Taylor AG Indus. v. Pure-Gro,* 54 F.3d 555, 560 (9th Cir.1995) (failure to warn claim; negligent testing claim where only evidence produced is allegedly inadequate product labels); *Bice v. Leslie's Poolmart,* 39 F.3d 887, 888 (8th Cir.1994) (failure to warn); *MacDonald v.*

*Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir. 1994) (failure to label properly; failure to warn); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 748 (4th Cir.1993) (failure to warn; breach of express and implied warranties; negligent testing claim where only evidence produced is allegedly inadequate product labels); *King v. E.I. Dupont De Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.) (failure to warn), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.) (negligence, strict liability, and implied warranty claims, all of which relied on allegedly inadequate labeling), *cert. denied sub nom. Papas v. Zoecon Corp.,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.,* 959 F.2d 158, 162 (10th Cir.) (strict liability and negligence claims alleging failure to warn), *vacated sub nom. Arkansas–Platte & Gulf v. Dow Chemical Co.,* 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), *and aff'd. on remand sub nom. Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.), *and cert. denied sub nom. Arkansas–Platte & Gulf v. Dow Chemical Co.,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993).

■ However, the Kuipers maintain that none of this authority applies, for their suit does not allege a labeling or packaging defect. Instead, they claim that when they purchased SCEPTER they relied on various representations—quite apart from the label—that SCEPTER is "safe" for follow corn. The Kuipers contend that these representations "are not stated on the label nor in the labeling," Appellant's Br. at 31, and they further assert that "the district court erred in finding that [the defendant's] advertising and SCEPTER's label and labeling are substantially the same." *Id.* at 30.

The Kuipers cannot automatically avoid FIFRA preemption simply because they challenge alleged misrepresentations that were made separately from the label. Our sister circuits have held that even off-label statements are preempted if they merely repeat information in the label itself. According to the Fourth Circuit, when advertising

or promotional materials merely repeat information or language contained in the label, claims directed at the advertising necessarily challenge the label itself and are therefore preempted. *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 130 (4th Cir.1995); *Worm,* 5 F.3d at 748. The Ninth and Eleventh Circuits go farther, holding that "any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging" and therefore are preempted. *Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 561 (9th Cir.1995) (quoting *Papas v. Upjohn Co.,* 985 F.2d 516, 519 (11th Cir.), *cert. denied sub nom. Papas v. Zoecon Corp.,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993)). Under both approaches, FIFRA preempts state law claims when the challenged advertising merely reiterates the label. The difference is that the Fourth Circuit holds that FIFRA allows state law claims against advertisements that "substantially differ" from the label, *Lowe,* 47 F.3d at 130, while the Ninth and Eleventh Circuits hold that FIFRA preempts these claims as well.

We do not need to choose between these two approaches in this case, for FIFRA preempts the Kuipers' claims under either rule. For the reasons discussed below, we conclude that the alleged misrepresentations relied on by the Kuipers essentially repeat the follow crop restrictions on SCEPTER's label. In challenging the alleged misrepresentations, the Kuipers challenge the label itself, and hence their claims are preempted.

### C.

To assess the Kuipers' contention that they challenge only off-label representations, we must identify the particular representations at issue. The Kuipers claim that American Cyanamid knowingly made a variety of misrepresentations in its advertising and promotional materials to the effect that SCEPTER was safe or extremely safe for follow corn. We do not need to consider these materials, however, because the Kuipers concede that they never saw any of them prior to purchasing and using SCEPTER. Def.'s Br. in Opp. to Plaintiff's Motion for Imposition of Collateral Estoppel at A–67 (deposition of Charles A. Kuiper, Jr.), A–58 (deposition of Charles H. Kuiper, Sr.). In fact, the Kuipers report that they heard only a single alleged off-label misrepresentation about SCEPTER: Donald Spangenberg's statement that SCEPTER is "safe" for follow corn. *Id.* at A–201 (deposition of Charles A. Kuiper, Jr.); Plaintiff's Supp. Br. Opp. M. Summ. J. at 8 n. 5. The district court found that "[t]his representation, of course, simply reiterates the sum and substance of the representation found on the label and read by the Kuipers, *i.e.,* that it was safe to plant corn as a follow crop 11 months after a SCEPTER application." *Kuiper v. American Cyanamid Co.,* 913 F.Supp. 1236, 1244–45 (E.D.Wis.1996).[4]

In an attempt to situate their claim under *Lowe*'s protective umbrella, the Kuipers argue that Spangenberg's statement "substantially differs" from the statements in the label. They point out that under FIFRA, EPA "shall register a pesticide" if, among other requirements, the agency finds that the pesticide "will perform its intended function without unreasonable adverse effects *on the environment.*" 7 U.S.C. § 136a(c)(5). Thus, the Kuipers argue, the label's rotational crop restriction means only that planting follow corn eleven months after applying SCEPTER will not have unreasonable adverse effects on the environment; it does not mean that there will be no adverse effects on the

---

4. The district court also recognized that the Kuipers face a potential difficulty in proving causation in their suit against American Cyanamid. The Kuipers' theory on causation appears to be that Spangenberg, in recommending SCEPTER and representing that it is safe for follow corn, relied on misleading advertisements and other promotional materials issued by American Cyanamid. Even assuming *arguendo* that Spangenberg was duped by other materials issued by

American Cyanamid into thinking that SCEPTER is a good product, it does not follow that the information that Spangenberg actually transmitted to the Kuipers—that SCEPTER is safe for follow corn—was false or deceptive. Because we conclude that Spangenberg's statement merely repeats information contained in the label itself, the Kuipers' claims are preempted even if Spangenberg was influenced by false information when he made the statement.

follow corn itself, as Spangenberg suggested. Furthermore, at oral argument, the Kuipers argued that if we equate the label's rotational crop restriction with Spangenberg's statement that SCEPTER is "safe" for follow corn, then we must conclude that SCEPTER is misbranded.[5] Approving a label that says SCEPTER is "safe" for follow corn would exceed EPA's authority under FIFRA, which discusses only adverse effects on the environment.

This argument requires us to determine what message EPA conveys when it approves rotational crop restrictions on a pesticide's label. The Kuipers argue that whatever the restrictions on the label mean, they definitely do not mean that the pesticide (used properly) poses no threat to follow crop yields. If the Kuipers are correct, then Spangenberg's statement that SCEPTER is "safe" for follow corn significantly departs from the label, and therefore the Kuipers' claims would not be preempted under the rule in *Lowe*. However, we believe that the Kuipers' argument rests on an inaccurate interpretation of FIFRA and EPA's implementing regulations.

The Kuipers' claim that FIFRA requires EPA to consider only adverse effects on the environment, and not adverse effects on follow corn, cannot succeed in light of FIFRA's definition of "environment" to include "water, air, land, and *all plants* and man and other animals living therein, and the interrelationships which exist among these." 7 U.S.C. § 136(j) (emphasis added). Follow corn is a plant and falls within this definition. Thus, the statutory language suggests that when EPA approved the rotational crop restriction on SCEPTER's label, EPA expressed its belief that planting follow corn eleven months after application of SCEPTER would have no unreasonable adverse effects on the environment, including the follow corn itself.

In addition, EPA's regulations support our view of the statutory language and refute the Kuipers' argument that SCEPTER would be misbranded if its label is understood to include a claim that the pesticide is no threat to follow corn. The labeling regulations

demonstrate that EPA considers several factors in approving rotational crop restrictions for a pesticide, including the effect of the pesticide on follow crops. EPA requires rotational crop restrictions in part to guard against dangerous accumulation of pesticides in the food supply, which could occur if follow crops absorb a pesticide that remains in the soil too long. *See* 40 C.F.R. § 158.202(d)(6). EPA's regulations also address, however, the damage that a pesticide might cause to the follow crops themselves, in terms of reduced crop yields or other harm:

> Hazard to nontarget organisms—
>
> The information required to assess hazards to nontarget organisms [is] derived from tests to determine pesticidal effects on birds, mammals, fish, terrestrial and aquatic invertebrates, *and plants....* A purpose common to all data requirements is to provide data which determines the need for (and appropriate wording for) precautionary label statements to minimize the potential adverse effects to nontarget organisms.

*Id.* § 158.202(h)(1) (emphasis added). The risk that a pesticide will reduce crop yields or stunt growth (*i.e.*, create "hazards" or "adverse effects") in follow crops (*i.e.*, "nontarget organisms") fits squarely within this section. Harm to follow crops is one of the risks that EPA considers in its label approval process; it is therefore consistent with this regulation to conclude that EPA's approval of SCEPTER's rotational crop restrictions represents the agency's determination, based on the data submitted by American Cyanamid, that SCEPTER will not harm follow crops if used according to the label.

The regulations on misbranding initially seem to cut the other way, in support of the Kuipers' claim that a pesticide whose label says it is "safe" for follow corn would be misbranded:

> Examples of statements or representations in the labeling which constitute misbranding include ... [c]laims as to the safety of the pesticide or its ingredients, including statements such as "safe," "nonpoisonous,"

5. A pesticide is misbranded if, among other things, "its labeling bears any statement ...

which is false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A).

"noninjurious," "harmless" or "nontoxic to humans and pets".... *Id.* § 156.10(a)(5). When viewed in context, however, even this regulation fails to support the Kuipers' interpretation. EPA prohibits use of the word "safe" in product labels to ensure that labels do not give product users a false sense of *personal* safety by promising that the pesticide is "noninjurious" or "nontoxic" to the users themselves (or to their pets). Thus, although this regulation would prevent SCEPTER's label from claiming that the pesticide was "safe" in terms of the personal health and safety of those who use or are exposed to it, we do not read the regulation as prohibiting labeling claims to the effect that SCEPTER poses no threat of damage to follow corn.

Spangenberg's statement that SCEPTER is "safe" for follow corn was made in this second sense—*i.e.*, that the pesticide posed no threat to follow corn. The Kuipers do not contend that they thought Spangenberg was referring to their own personal safety as SCEPTER users; nor did they claim any personal injuries from use of SCEPTER. Because Spangenberg's comment does not make the sort of personal health or safety claim barred by 40 C.F.R. § 156.10(a)(5), our decision that his comment is equivalent to the rotational crop restriction in SCEPTER's label does not entail the conclusion that the pesticide is misbranded.

In sum, based on our reading of the statutory language and the regulations, we conclude that the rotational crop restrictions approved by EPA are based—among other factors—on an assessment that planting follow corn eleven months after applying SCEPTER will not harm the follow corn. We therefore do not believe that Spangenberg's statement that SCEPTER is "safe" for follow corn substantially differs from the rotational crop restriction on the label.[6] Because Spangenberg's statement essentially repeats the restrictions on the label, the Kuipers' claims challenging his statement necessarily challenge the label itself and are therefore preempted.

### D.

Furthermore, even if we were to agree with the Kuipers that EPA exceeded its authority in approving SCEPTER's label, and therefore agree that SCEPTER is misbranded, FIFRA would still preempt the Kuipers' claim. A state tort claim premised on misbranding arguably might appear to be protected from preemption under the Fourth Circuit's rule authorizing state common law actions to enforce FIFRA's own requirements: "[I]f 'a state elects to recognize [that] a breach of a FIFRA-created duty forms the basis for a state remedy ... it is permitted to do so by 7 U.S.C. § 136v(b).'" *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 128 (4th Cir. 1995) (quoting *Worm v. American Cyanamid Co.,* 5 F.3d 744, 748 (4th Cir.1993)). However, the Fourth Circuit expressly limits this rule to common-law actions that do not challenge an EPA-approved label. As the court stated in *Worm*:

The Worms' argument that their state law claims are based on duties not inconsistent with those imposed by FIFRA has no merit. Because the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one....

If a state elects to recognize that a breach of a FIFRA-created duty forms the basis for a state remedy, we have held that it is permitted to do so by 7 U.S.C. § 136v(b). Allowing such actions, however, is substantially distinguishable from accepting the argument that the state com-

---

6. Because we conclude that the alleged misrepresentation here does not substantially differ from the information in the label, we express no opinion on the Fourth Circuit's rule that FIFRA permits state-law claims challenging representations that do substantially differ from the label. *See Lowe v. Sporicidin Int'l,* 47 F.3d 124, 130 (4th Cir.1995); *see also Cipollone v. Liggett Group,* 505 U.S. 504, 528–29, 112 S.Ct. 2608,

2623–24, 120 L.Ed.2d 407 (opinion of Stevens, J., joined by Rehnquist, C.J., and White and O'Connor, JJ.) (holding that similar preemption provision in § 5 of the Public Health Cigarette Smoking Act of 1969 does not preempt state-law fraudulent misrepresentation claims based on false statements of material fact made in advertisements).

mon law duty to warn is not "in addition to or different from" the federally defined duty.

5 F.3d at 748 (footnote and citations omitted). Although this statement is directed at common-law failure to warn claims, the same principle holds true for misbranding claims, which challenge the label even more directly. *See Welchert v. American Cyanamid Inc.*, 59 F.3d 69, 73 (8th Cir.1995) (preempting state-law claim because to allow plaintiffs' "claim challenging the accuracy of the herbicide label's federally-mandated and approved statement ... would be to allow state courts to sit ... as super-EPA review boards that could question the adequacy of the EPA's determination of whether a pesticide registrant successfully complied with ... its own regulations"); *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.) (rejecting common law liability for alleged misbranding because "it is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is complete or inaccurate, and if so what label changes, if any, should be made"), *cert. denied*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). In short, FIFRA does not allow states to second-guess EPA's labeling decisions under the guise of enforcing the requirements of FIFRA itself.

To conclude, we hold that FIFRA preempts the Kuipers' claims because the alleged misrepresentation that SCEPTER is "safe" for follow corn essentially restates the rotational crop restriction on the label. Furthermore, even if EPA had exceeded its statutory authority in approving SCEPTER's label, and therefore SCEPTER were misbranded, FIFRA still would preempt the Kuipers' state law claims because they impermissibly challenge the label.

## IV. Conclusion

Because the Kuipers' statutory fraudulent representation claim is barred by the statute of limitations and their remaining claims are preempted by FIFRA, we affirm the district court's entry of summary judgment in favor of American Cyanamid.