**Ralph ANDERSON, et al., Plaintiffs,**

v.

**DOW AGROSCIENCES LLC, Defendant.**

**No. CIV–01–1939–HE.**

United States District Court, W.D. Oklahoma.

May 14, 2003.

Phil Watkins, Michael S. Miller, Phil Watkins, P.C., San Antonio, TX, Terry W. Tippens, Esquire, Jay P. Walters, Esquire, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, OK, Counsel for Plaintiffs.

Dean T. Barnhard, Joseph G. Eaton, Larry A. Mackey, Barnes & Thornburg, Indianapolis, IN, Anton J. Rupert, Crowe & Dunlevy, Oklahoma City, OK, Patrick M. Ryan, Ryan, Whaley, Hampton & Bomhoff, P.C., Oklahoma City, OK, Counsel for Defendant.

## ORDER

HEATON, District Judge.

This case is before the Court on defendant's motion for summary judgment. Plaintiffs have responded in opposition to the motion. Upon review, the Court determines defendant's motion should be granted in part and denied in part.[1]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir.1999) *overruled on other grounds Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Martin*, 190 F.3d at 1129.

## BACKGROUND

Defendant is the manufacturer of "Strongarm,"[2] a herbicide used to control weeds in peanut crops. Plaintiffs are a group of Oklahoma peanut farmers who purchased Strongarm for use on their peanut crops in the year 2000.[3] Plaintiffs contend the application of Strongarm to their fields caused various injuries to the sprouting peanut plants such that they did not grow properly, resulting in a significant reduction in yield and profits.[4] Plain-

---

1. The Court heard oral argument on the defendant's motion on May 2, 2003.

2. Strongarm is a trademark of Dow Agrosciences LLC.

3. Plaintiffs purchased Strongarm from various local dealers who then applied the herbicide to the plaintiffs' peanut fields.

4. According to plaintiffs, Oklahoma soil, or at least the soil found in and around plaintiffs' fields, is highly alkaline. They claim the injury to their peanut plants occurred as a result of the application of Strongarm, through "pre-plant incorporation," to this highly alkaline soil.

tiffs assert that the damage caused by Strongarm impacted their 2000, 2001, and 2002, harvests and will continue to cause damage to their soil and subsequent crops.

Plaintiffs raise claims under Oklahoma law for negligence, violation of the Oklahoma Consumer Protection Act, breach of express and implied warranties, fraud and fraud in the inducement, estoppel and waiver, negligent representation, and strict liability. Defendant has filed a motion for summary judgment arguing plaintiffs' claims are either barred under 2 Okla. Stat. § 3–82(H), preempted under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), or fail to state a claim.[5]

## DISCUSSION

### A. 2 OKLA. STAT. § 3–82(H)

Defendant first asserts that all of plaintiffs' claims, except those of plaintiff Mike Lovell, are barred by the application of 2 Okla. Stat. § 3–82(H), which states:

> No action for alleged damages to growing annual crops or plants may be brought or maintained unless the person claiming the damages has filed with the Board [of Agriculture] a written statement of alleged damages on a form prescribed by the Board within ninety (90) days of the date that the alleged damages occurred, or prior to the time that twenty-five percent (25%) of a damaged crop has been harvested.

Plaintiffs admit that, except for plaintiff Lovell, none of the plaintiffs notified the Board of Agriculture about the damage to their crops. Plaintiffs argue, however, that the statutory provision does not apply to their particular claims. Specifically, plaintiffs assert that the provision applies only to claims against licensed pesticide applicators, not claims against pesticide manufacturers. Upon review of the statutory provision and its history, the Court agrees that plaintiffs' claims are not barred.

Defendant's argument as to the application of Section 3–82(H) is dependent on the Oklahoma Legislature's 2000 amendment of the statute applying to this case, as it is the 2000 amendments which arguably add sellers and distributors of pesticides as persons subject to the statute's reporting/damages-limiting provision.[6] As a threshold matter, there is considerable doubt whether the 2000 amendments have any application here due to the timing of the events giving rise to this case. The Strongarm product was purchased and applied in the spring of 2000. The 2000 amendments to Section 3–82(H) were not effective until June 6, 2000. There is at least some indication in the submitted materials that problems with the affected

---

5. A court may dismiss a claim for failure to state a claim under Fed.R.Civ.P. 12(b)(6) only if it concludes that "the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988). The Court must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Id.*

6. Prior to 2000, there appears to have been little doubt that Section 3–82(H), in its earlier formulations, applied only to applicators of pesticides. See *Leonard Farms v. Thompson Hayward Chem. Co.*, 568 S.W.2d 438, 440 (Tex.Civ.App.1978) (finding the damages provision of Section 3–82 applied only to pesticide applicators, not manufacturers or sellers).

peanut crops were appearing "several weeks" prior to July, 2000.[7] Plaintiffs' claims may therefore have accrued prior to the adoption of the 2000 amendment to Section 3–82(H).

■ Apart from any timing issues, the dispositive issue is whether Section 3–82(H) is potentially applicable to claims against pesticide manufacturers. The various rules of statutory construction alluded to by the parties point in different directions and the issue is not free from doubt. However, the positioning of the 3–82(H) language in the re-codified statute—immediately following the portions applying to applicators—suggests the legislature intended to continue to apply its damages-limiting provisions to those persons to whom it had previously applied—applicators. Had the legislature intended its restructuring of Section 3–82 to extend the damages limitation provision to manufacturers, it would likely have said so clearly and would have done so, if not by express words, then by at least positioning the applicable provision at the end of the statute where its applicability to all persons within the statute's scope would have been more clear. In any event, the Court concludes Section 3–82(H) continues to apply only to claims against licensed pesticide applicators, not pesticide manufacturers. Defendant's motion, insofar as it is based on the potential application of Section 3–82(H), is denied.

7. One of the plaintiffs, Mr. Lovell, filed a complaint or report with the Department of Agriculture on or about July 10, 2000. In a later meeting with a Department investigator, Lovell apparently indicated he had noticed problems with his peanuts "over the last several weeks." See Exhibit I to defendant's August 1, 2002, summary judgment brief.

8. Unreasonable adverse effects on the environment means "any unreasonable risk to man or the environment, taking into account

## B. *FEDERAL PREEMPTION UNDER FIFRA*

FIFRA regulates the use and sale of pesticides and herbicides in the United States. Under FIFRA, all herbicides sold in the United States must be registered with the Environmental Protection Agency (EPA). 7 U.S.C. § 136a(a). As part of the registration process, a herbicide manufacturer must submit a statement addressing, among other things, the composition of the herbicide, directions for its use, and all claims to be made for it. 7 U.S.C. § 136a(c). Before registering a herbicide, the EPA will determine whether the herbicide's "composition is such as to warrant the proposed claims for it," whether its labeling is in compliance with the applicable FIFRA requirements, whether the herbicide will perform its intended function without unreasonable adverse effects on the environment, and whether, when used in accordance with widespread and commonly recognized practices, it will not generally cause unreasonable adverse effects on the environment.[8] 7 U.S.C. § 136a(c)(5).

While FIFRA grants limited authority to the states to regulate the sale or use of any federally registered herbicide in a particular state,[9] it expressly prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required" under FI-

the economic, social, and environmental costs and benefits of the use of any pesticide ...." 7 U.S.C. § 136(bb).

9. "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this sub-chapter." 7 U.S.C. § 136v(a).

FRA.[10] 7 U.S.C. § 136v(b). It is this statutory limitation upon which the defendant relies as a basis for preemption of plaintiffs' claims.

In *Arkansas–Platte & Gulf P'ship v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.1993), the Tenth Circuit addressed the preemptive scope of section 136v(b) as it applied to state law tort claims. In that case, the Tenth Circuit held that FIFRA expressly preempts state law tort claims to the extent they "require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA ...." In comparing section 136v(b) to the provisions of the Cigarette Smoking Act analyzed by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Tenth Circuit found the labeling provision of § 136v(b) to be as inclusive as that found in the Cigarette Smoking Act which preempted state common law labeling and duty to warn claims. *Arkansas–Platte,* 981 F.2d at 1179 ("Section 136v(b) exists in the context of what federal law permits the state to regulate, and it simply deprives the state of power to adopt any regulation. This is as broad as the § 5(b) proscription."). Based on this analysis, the court identified "the domain expressly preempted" by FIFRA, *see Cipollone,* 505 U.S. at 517, 112 S.Ct. 2608, to include any claims related to labeling and packaging. *Arkansas–Platte,* 981 F.2d at 1179 ("We believe Congress circumscribed the area of labeling and packaging and

preserved it only for federal law. With the same stroke, Congress banned any form of state regulation, and the interdiction law is clear and irrefutable.").[11]

The overwhelming majority of courts have generally agreed with the Tenth Circuit's interpretation of the scope of section 136v(b). *See e.g., Lowe's Home Ctrs., Inc. v. Olin Corp.,* 313 F.3d 1307 (11th Cir. 2002); *Andrus v. AgrEvo USA Co.,* 178 F.3d 395 (5th Cir.1999); *Grenier v. Vermont Log Bldgs., Inc.,* 96 F.3d 559 (1st Cir.1996); *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69 (8th Cir.1995); *Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555 (9th Cir.1995); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993); *Dahlman Farms, Inc. v. FMC Corp.,* 240 F.Supp.2d 1012 (D.Minn.2002); *Oken v. Monsanto Co.,* 218 F.Supp.2d 1361 (S.D.Fla.2002); *Dow Agrosciences LLC v. Bates,* 205 F.Supp.2d 623 (N.D.Tex.2002) (involving "Strongarm"); *Gooch v. E.I. Du Pont de Nemours & Co.,* 40 F.Supp.2d 863 (W.D.Ky.1999); *Koch v. Shell Oil Co.,* 173 F.R.D. 288 (D.Kan.1997); *Jillson v. Vermont Log Bldgs., Inc.,* 857 F.Supp. 985 (D.Mass.1994); *Dow Chemical Co. v. Ebling,* 753 N.E.2d 633 (Ind.2001); *Etcheverry v. Tri–Ag Serv., Inc.,* 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366 (2000); *Eyl v. Ciba–Geigy Corp.,* 264 Neb. 582, 650 N.W.2d 744 (2002); *Wright v. American Cyanamid Co.,* 599 N.W.2d 668 (Iowa 1999); *Patton v. Country Place Condominium Assoc.,* 2000 WL 33728374 (Ill. App. Jul. 7, 2000). *But see American Cyanamid Co. v. Geye,* 79 S.W.3d 21 (Tex. 2002) (state common law damage claims

---

**10.** "The term 'labeling' means all labels and all other written, printed, or graphic matter" which accompanies the pesticide at any time or "to which reference is made on the label or in literature accompanying the pesticide or device ...." 7 U.S.C. § 136(p)(2).

**11.** This finding is not inconsistent with the Supreme Court's decision in *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991).

not preempted under FIFRA because the EPA does not regulate efficacy claims on product labels).[12] Contrary to this authority, however, plaintiffs argue that the matter of preemption should be revisited in light of *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).[13] They further argue that, even if the preemptive scope of section 136v(b) remained the same after *Medtronic*, their particular tort claims are not preempted because they are not label based.

In *Medtronic*, the Supreme Court analyzed the preemptive effect of the Medical Device Amendments of 1976 ("MDA") on state law claims of negligence and strict liability brought against the manufacturer of an allegedly defective pacemaker. In finding the plaintiff's common law claims were not preempted by the MDA, the Court held that "preemption occur[s] only where a particular state requirement threatens to interfere with a specific federal interest." *Medtronic*, 518 U.S. at 500, 116 S.Ct. 2240. The opinion did not address FIFRA and specifically distinguished the statutory provision at issue in *Cipollone*. Because the Court relied heavily on congressional intent in determining the scope of preemption under the MDA, most courts which have analyzed FIFRA's preemption clause after *Medtronic* agree that the established interpretation of FIFRA's preemption clause remains unaffected. *See e.g., Koch*, 173 F.R.D. at 289–90. Further, as noted by the Fourth Circuit in *Lescs v. William R. Hughes, Inc.*, 168 F.3d 482, 1999 WL 12913 (4th Cir. Jan.14, 1999) (unpublished), the MDA provision analyzed in *Medtronic* differs from section 136(v)(b) in at least three respects:

> First, although it also applied to any requirement established by state law, it was not limited to merely labeling or packaging. Second, under subsection (b), the clause allowed the FDA to exempt state requirements from the effect of preemption. Third, and perhaps most important, the Court found that the language of [§ 360k was] not entirely clear.

*Lescs*, 1999 WL 12913, at *4 (internal citations and quotations omitted). Based on these differences, the court concluded the decision in *Medtronic* did not alter its previous interpretation of FIFRA's pre-

---

**12.** The court in *Geye* concluded that, since the EPA did not actually evaluate the "efficacy" (does it kill the weeds it is supposed to kill?) or the "target area phytotoxicity" (what impact does it have on the plants, both desirable and undesirable, in the area of application?) of the herbicide there in issue, claims based on the efficacy or phytotoxicity of the product were not preempted by FIFRA. As a matter of equity, that conclusion has considerable appeal and might be persuasive in other circumstances. However, given the scope of the FIFRA preemption as interpreted by the Tenth Circuit ("We believe Congress circumscribed the area of labeling and packaging ...." *Arkansas–Platte*, 981 F.2d at 1179 (emphasis added)) and most other courts, the distinction is not dispositive here. It is therefore unnecessary to determine in this case exactly what the EPA did or did not evaluate as to the Strongarm product.

**13.** Plaintiffs also rely on an amicus brief filed by the EPA in *Etcheverry v. Tri-Ag Service, Inc.*, 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366 (2000). In that brief, the EPA apparently expressed the opinion that FIFRA does not preempt common-law claims because the EPA does not actually evaluate the efficacy of a pesticide before approving its label. *Etcheverry*, 93 Cal.Rptr.2d 36, 993 P.2d at 374. In rejecting the EPA's argument, however, the California Supreme Court found the EPA's waiver of the submission of efficacy data was irrelevant, since the plaintiffs in that case complained of phytotoxicity, not inefficacy.

emption clause. *Lescs,* 1999 WL 12913, at *4 ("Because these aspects of the statutory scheme differentiated the effect of the MDA preemption clause from the preemption clause contained in FIFRA and supported the *Medtronic* holding, we determine that our interpretation of FIFRA's preemption clause remains unaffected."). *See Eyl,* 650 N.W.2d at 752 (" 'While at first blush *Medtronic, Inc.* appears to retreat from the preemption analysis put forth in *Cipollone,* it was the separate and distinct statutes that were involved in each case that were the determining factor.' ") (quoting *Ackles v. Luttrell,* 252 Neb. 273, 561 N.W.2d 573 (1997)). Lacking specific Tenth Circuit guidance on the issue, the Court agrees with the various courts which have concluded that the preemptive scope of section 136v(b) is unchanged after *Medtronic. See e.g., Netland v. Hess & Clark, Inc.,* 284 F.3d 895, 899 (8th Cir.2002) (refusing to revisit prior decisions which preempted state law failure to warn claims and noting that two other circuits had "concluded that the established interpretation of the FIFRA preemption clause is unchanged" after *Medtronic* ); *Hawkins v. Leslie's Pool Mart, Inc.,* 184 F.3d 244, 250 (3d Cir.1999) ("[E]ven assuming that FIFRA is analogous to the Medical Device Amendments addressed by the Supreme Court in *Medtronic,* contrary to [plaintiff's] assertions, we do not read that case as standing for the overarching premise that tort claims fall outside 'preempted requirements.' "); *Grenier,* 96 F.3d at 563 ("[I]t is now settled by the Supreme Court in *Cipollone* and [*Medtronic* ], that 'requirements' in this context presumptively includes state causes of action as well as laws and regulations."); *Eyl,* 650 N.W.2d at 754 (declining to overrule a previous decision upholding preemption of failure to warn claims even in light of *Medtronic* );

*Etcheverry,* 93 Cal.Rptr.2d 36, 993 P.2d at 373 ("*Medtronic* does not undermine the conclusion that FIFRA preempts state failure-to-warn claims.").

With these considerations in mind, the Court concludes most of plaintiffs' claims are in fact preempted by FIFRA. Plaintiffs' rely on two distinct premises in support of their claims: First, that Strongarm was not fit for use in the alkaline soil of Oklahoma; and second, that, after the defendant was notified of the damage to plaintiffs' crops, its representatives told plaintiffs that their crops would grow out of the damage and, if not, they would be compensated. Plaintiffs' claims which rely on the first premise, including their claims of negligence, breach of express and implied warranties, deceptive trade practices, fraud and negligent representation can essentially be characterized as failure to warn claims subject to preemption under FIFRA. Specifically, plaintiffs' allege with respect to these claims that they relied upon the representations made by the defendant, both on the Strongarm label and through its representatives, concerning the herbicide's qualities and characteristics. Because these claims turn on the label's alleged inadequate warnings, they are preempted under FIFRA.

In particular, plaintiffs' negligence claim is based on an allegation that the defendant's testing procedures were inadequate because Strongarm was never specifically tested on Oklahoma soil. Regardless of how the claim is characterized by plaintiffs, it necessarily requires a showing that the defendant should have included an additional warning on its label regarding use in Oklahoma. As a result, the claim is preempted as an attack on the EPA approved label. *See Etcheverry,* 93 Cal. Rptr.2d 36, 993 P.2d at 377 ("When a

claim, however couched, boils down to an assertion that a pesticide's label failed to warn of the damage plaintiff allegedly suffered, the claim is preempted by FIFRA."). *Cf. Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608 (negligent testing theory was preempted under the Cigarette Smoking Act of 1969 because the claim would require a showing that the respondents' advertising or promotions should have included additional, or more clearly stated, warnings). The same applies to plaintiffs' claims of breach of express and implied warranties which involve allegations that the defendant's EPA approved label inadequately warned against use of Strongarm on peanuts grown in Oklahoma's alkaline soil. *See Netland*, 284 F.3d at 898 ("Common law claims for breach of express warranty . . . are preempted by FIFRA."); *Grenier*, 96 F.3d at 564 (express warranty claim preempted because "[t]o premise liability on the inaccuracy of the statement [on the label] is in substance to determine that a different statement should have been made in the labeling"); *Taylor AG Indus.*, 54 F.3d at 563 ("To the extent the implied warranty claim depends upon inadequacies in labeling or packaging, FIFRA section 136v preempts the claim.") (internal quotations omitted); *Lowe*, 47 F.3d at 129 ("express warranty claim based on EPA-approved labeling materials is preempted"); *Worm*, 5 F.3d at 749 (breach of express warranty claims preempted where representation at issue was not voluntary but required and approved by the EPA).

■ In their fraud, negligent representation and deceptive trade practices claims, plaintiffs essentially assert that the representations made about the herbicide by the defendant, both on its label and through "off-label" statements made by its representatives,[14] were false and misleading because they failed to address the dangers of using Strongarm in Oklahoma. Again, these claims are, in effect, failure to warn claims subject to preemption. With respect to these claims, however, plaintiffs submit that the Supreme Court's reasoning in *Cipollone* provides a basis for avoiding preemption.

In *Cipollone*, the Court held that a claim of fraudulent misrepresentation was not preempted under the Cigarette Smoking Act of 1969 because the claim was "predicated not on a duty based on smoking and health but rather on a more general obligation the duty not to deceive." *Cipollone*, 505 U.S. at 528–29, 112 S.Ct. 2608 (internal quotations omitted). In the FIFRA context, however, courts have found this language inapplicable due to the broader scope of the preemption provision found in § 136v(b) versus the one found in the Cigarette Act of 1969. The analysis set forth in *Kuiper v. American Cyanamid Co.*, 913 F.Supp. 1236 (E.D.Wis.1996), *aff'd*, 131 F.3d 656 (7th Cir.1997), illustrates the point.

The *Kuiper* court noted that while the two provisions are identical in scope, they differ in at least one significant respect. Specifically, the court noted that while "both statutes bar any state requirements concerning their respective subject matter, i.e., advertising or promotion under the [Cigarette Act] and labeling or packaging

---

**14.** Plaintiffs claim that certain representatives of the defendant orally stated that Strongarm was an "excellent" product which would kill weeds without hurting their peanuts. Because these off-label statements do not differ significantly from the label, preemption still results. See *Kuiper*, 131 F.3d at 662–63 (off-label statements which merely reiterate information found on the label itself are preempted).

under the FIFRA," the Cigarette Act goes on step further by stating that "the state law requirements at issue must be based on smoking and health." *Kuiper*, 913 F.Supp. at 1244.

The *Cipollone* Court seized upon this latter language in finding that the fraud-in-advertising claims were not preempted by the [Cigarette Act]. The Court reasoned that such fraud claims were not predicated on a duty based on smoking and health, but on a more general duty not to deceive, and therefore did not fall within the scope of the preemption provision. FIFRA, however, does not state that the state law requirements at issue must be based on anything, much less a particular subject matter or objective. Rather, the statute clearly precludes any requirements for labeling or packaging, making no distinction between requirements arising from a general duty not to deceive and requirements arising from a more specific duty based on pesticides and health.

*Kuiper*, 913 F.Supp. at 1243–1244 (internal citations and quotations omitted). *See Jarman v. United Indus. Corp.*, 98 F.Supp.2d 757, 764 (S.D.Miss.2000) ("Unlike § 5(b) of the Public Health Cigarette Smoking Act of 1969, which limits the preemptive force of that Act to state laws based on smoking and health, FIFRA broadly preempts any requirements that arise under state law, suggesting that Congress did intend, via FIFRA, to proscribe the regulation of deceptive advertising."). "[G]iven the broader scope of the preemption language in FIFRA," the particular reasoning in *Cipollone* is inapplicable in the context of FIFRA and does not provide a basis for avoiding preemption. *Kuiper*, 913 F.Supp. at 1244. As a result, plaintiffs' fraud, negligent representation and deceptive trade practices claims are preempted.

■ The only claims which arguably do not turn on the label are those regarding the off-label statements made by representatives of the defendant after the plaintiffs' crops had already sustained damage (as referenced in plaintiffs' fraud in the inducement and estoppel and waiver causes of action),[15] and those involving a design or manufacturer's defect (as loosely referenced in plaintiffs' strict liability cause of action). However, "merely to *call* something a design or manufacturing defect claim does not automatically avoid FIFRA's explicit preemption clause." *Grenier*, 96 F.3d at 564 (emphasis in original). Rather, in determining whether the claims are essentially a challenge to the label or the overall design, a court must ask whether, in seeking to avoid liability for any error, the manufacturer would choose to alter the label or the product. *See Netland*, 284 F.3d at 900 (citing *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747–48 (4th Cir.1993)). Here, plaintiffs' claim that Strongarm was defectively designed or manufactured because it was foreseeable that it would be used on peanuts in Oklahoma and that it was unfit for this use, "is effectively no more than an attack on the failure to warn" against such use in

---

15. Only ten (10) plaintiffs have produced affidavits asserting they were specifically told by a representative of the defendant, or a licensed dealer, to grow their crops to harvest. See Plaintiffs' Exhibits 12–13, affidavits of Dale Taff, Duane Stevens, Glen Harvey, Chris Merriman, Roger Merriman, David Farmer, Weldon Barnes, Clifford R. Merriman, J.C. Merriman, Paul Kelly Horton. Only four (4) of these ten (10) assert they were promised payment for some or all of their damages. Id., affidavits of Dale Taff, Glen Harvey, David Farmer, Weldon Barnes.

Oklahoma. *Grenier*, 96 F.3d at 564–65. Because plaintiffs do not attack the actual design or manufacture of the product, the Court concludes those claims are preempted under FIFRA. *Grenier*, 96 F.3d at 564–65. The remaining "off-label" claims, however, do not involve statements which reiterate information found on the label. Thus, they are not preempted under FIFRA.

### C. *Effect of the Limitation of Remedies Provision*

■■■ With respect to the remaining off-label claims, defendant argues it is entitled to summary judgment because the claims are governed by the Limitation of Remedies provision contained on the Strongarm label. The off-label statements are asserted by plaintiffs in support of both their fraud and estoppel and waiver causes of action. While the Limitation of Remedies provision would not limit recovery on the fraud claims if proven,[16] it may very well limit recovery on their estoppel and waiver claims. The applicable provision states as follows:

> The exclusive remedy for losses or damages resulting from the use of this product (including claims based on contract, negligence, strict liability, or other legal theories), shall be limited to, at Dow Agrosciences election, one of the following:
>
> 1. Refund of the purchase price paid by buyer or user for product bought, or
>
> 2. Replacement of amount of product used.
>
> Dow Agrosciences shall not be liable for losses or damages resulting from handling or use of this product unless Dow Agrosciences is promptly notified of such loss or damage in writing, in no case shall Dow Agrosciences be liable for consequential or incidental damages or losses.
>
> The terms of the Warranty Disclaimer above and this Limitation of Remedies cannot be varied by any written or verbal statements or agreements. No employee or sales agent of Dow Agrosciences or the seller is authorized to vary or exceed the terms of the Warranty Disclaimer or this Limitation of Remedies in any manner.

Plaintiffs' Exh. A, p. 11.

■■■ Oklahoma's Commercial Code allows parties to limit their liability in damages. *See* 12A Okla. Stat. § 2–316(4) ("Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy"). However, a limitation such as the one in question will not be enforced if it fails of its essential purpose or is found to be unconscionable. *See* 12A Okla. Stat. § 2–719(3); *Collins Radio Co. of Dallas, Texas v. R.B. Bell*, 623 P.2d 1039, 1051 (Okla.App.1980). In determining as a matter of law whether a particular clause is unconscionable, the Court must afford the parties a reasonable opportunity to present evidence as to the "commercial setting, purpose and effect" of the clause. 12A Okla. Stat. § 2–302. While "[i]t is prima facie unconscionable to limit damages 'for injury to the person in the case of consumer goods,'" it is not prima facie unconscionable to limit damages for commercial loss. *Collins Radio*, 623 P.2d at 1051 (quoting 12A Okla. Stat. § 2–719(3)).

---

**16.** See e.g., *Murray v. D & J Motor Co., Inc.*, 958 P.2d 823, 831 (Okla.Civ.App.1998) ("Fraud and deceit provide a ground for recovery that is independent of contract or UCC.").

In this case, plaintiffs claim that the Limitation of Remedies provision is unconscionable because they were not provided an opportunity to read the provision before purchase due to the product's sealed condition or its selection and application by a third-party. Because the plaintiffs have raised a claim of unconscionability, the parties are entitled to submit evidence specifically addressing the factors bearing on the determination of unconscionability. *See* 12A Okla. Stat. § 2–302(2) ("When it is claimed ... that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."). If it is determined that the clause is not unconscionable, summary judgment would then be appropriate on plaintiffs' estoppel and waiver claims involving the off-label statements. However, as noted above, this determination will not effect the plaintiffs' fraud claims involving the off-label statements. If plaintiffs are able to prove their fraud claims as alleged, then their remedies will not be limited by the applicable provision. *See Murray,* 958 P.2d at 831 ("Fraud, if practiced by a seller, cannot be avoided on the ground that seller has disclaimed the very matter out of which the fraud arises.").

D. *Conclusion*

For the reasons set forth above, summary judgment is GRANTED IN PART AND DENIED IN PART. Summary judgment is denied as to those fraud and estoppel and waiver claims involving off-label statements made to certain plaintiffs after

purchase. Summary judgment is granted in favor of defendant on all remaining claims.[17] The parties are granted until June 1, 2003, to submit supplemental briefs, supported, as appropriate, by affidavit, addressing the enforceability of the Limitation of Remedies provision.[18]

---

17. In light of the Court's ruling, defendant's motion for leave to submit supplemental affidavit (Doc. # 130) is denied.

18. The briefs shall not exceed ten (10) pages in length.