REVISED, June 30, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60611

Summary Calendar

_____

TOMMY LEE ANDRUS,

                    Plaintiff-Appellant,

v.

AGREVO USA COMPANY,

                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____
June 28, 1999

Before KING, Chief Judge, and STEWART and PARKER, Circuit Judges.

KING, Chief Judge:

     This appeal requires us to decide whether the Federal
Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.
§§ 136-136y, preempts state law claims alleging that a herbicide
failed to perform as specified in its product label and that its
manufacturer breached its implied warranty of fitness for a
particular purpose.  The magistrate judge granted the defendant
manufacturer summary judgment, finding that FIFRA preempts
plaintiff-appellant's claims regarding the performance of the
herbicide and that Mississippi law does not recognize an implied
warranty of fitness for a particular purpose when the product is

purchased for its ordinary use.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant Tommy Lee Andrus alleges that he applied WHIP 360, a herbicide manufactured by defendant-appellee AgrEvo USA Company (AgrEvo), to 280 acres of rice in 1995 to combat a weed known as sprangletop.  In doing so, Andrus claims, he relied on the recommendation of Jeff Champion, an AgrEvo field representative who viewed Andrus's rice field and informed him that WHIP 360 would effectively control "the spr[a]ngletop problem."  Champion stated that he monitored closely Andrus's application of WHIP 360 to his field and that the application was done in complete conformity with the WHIP 360 product label. Andrus and Champion claim, however, that WHIP 360 not only failed to control the sprangletop, but caused significant damage to Andrus's rice crop.

The WHIP 360 product label explains in detail how to apply the herbicide and states that it is a "water emulsion formulation for use in selective postemergence control of annual and perennial grassy weeds in rice."  The label also asserts that "[r]ice is tolerant to postemergence applications of WHIP 360 Herbicide from the 4-leaf to the late tillering stage of rice development" and that although "[p]ostemergence applications may result in temporary rice injury . . . . The rice will normally recover from these symptoms in two to four weeks."

Andrus filed this diversity suit in the United States District Court for the Northern District of Mississippi on

2

February 6, 1997.  Andrus alleges that the WHIP 360 product failed to perform as specified on the product label, that Andrus detrimentally relied on the specifications in the WHIP 360 product label, and that AgrEvo breached its implied warranty of fitness for a particular purpose.[1]  The parties consented to trial and entry of judgment by a United States Magistrate Judge under 28 U.S.C. § 636(c).

AgrEvo moved for summary judgment on July 15, 1998.  AgrEvo asserted that Andrus's claims were based on misleading, inadequate or deficient labeling of the WHIP 360 product, and that such claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136-136y.  AgrEvo also argued that Andrus could not prevail on his claim that it had breached an implied warranty of fitness for a particular purpose for the additional reason that Andrus had purchased and employed WHIP 360 for its ordinary use, rather than a particular purpose, and that such an implied warranty is not created when goods are purchased for their ordinary use.  Andrus responded that FIFRA "has no application" to this suit because his claims are based on "the failure of WHIP 360 to perform as advertised on its label" and are not based on the label's

---

[1] Mississippi Code Annotated § 75-2-315 states in relevant part:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

inadequacies. Andrus also argued that, to prevail on his implied warranty claim, he needs only to demonstrate that Champion knew of the purpose for which the herbicide was required and his reliance on Champion's skill or judgment to select the proper herbicide.

The magistrate judge granted AgrEvo's motion for summary judgment on September 18, 1998. The magistrate judge found that "[d]espite Andrus's protestations that he is not complaining about the label, his complaint states otherwise." The magistrate judge found that Andrus failed to plainly assert in his complaint that the product is defective or that AgrEvo is strictly liable for such a defect. Because Andrus's performance and detrimental reliance claims are linked to the specifications in the label, the district court found them preempted and granted summary judgment. The magistrate judge also granted AgrEvo summary judgment on the implied warranty claim, finding that "Mississippi law and the prevailing view in other states is that a particular purpose means a purpose other than its ordinary use" and that Andrus offered no evidence suggesting he purchased WHIP 360 for any use other than its ordinary use.[2] Andrus timely appeals.

## II. DISCUSSION

---

[2] Andrus argues on appeal that the magistrate judge "misinterpreted Mississippi law . . . as meaning that when a product is sold for an ordinary use there can be no implied warranty of fitness for a particular use." Because we conclude that FIFRA preempts Andrus's implied warranty claim, however, we affirm the magistrate judge's determination that AgrEvo is entitled to summary judgment without reaching Andrus's arguments as to whether a "particular purpose" may include an "ordinary use" under Mississippi law.

4

Andrus argues that the magistrate judge erred in holding that his performance claims are preempted under FIFRA. Andrus contends that FIFRA does not apply here because the elements of his claims do not require proof that the WHIP 360 label should have included additional or different warnings from those required by FIFRA. As he argued to the magistrate judge below, Andrus asserts that his claims are not based on the inadequacies of the label, but rather on the failure of the herbicide to perform as advertised on that label and as recommended by Champion.[3]

We review the district court's grant of summary judgment de novo. See Tolson v. Avondale Indus., Inc., 141 F.3d 604, 608 (5th Cir. 1998). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Although we can affirm a grant of summary judgment on grounds on which the district court did not rely, those grounds must have been proposed or asserted by the movant in that

---

[3] Andrus also argues that WHIP 360 failed to perform "as otherwise advertised." Andrus offers no indication what "other" advertisement he is referring to, and he introduced no evidence to the district court of any advertisement other than the product label. In fact, Andrus testified in his deposition that he was provided no sales materials or advertisements and had read nothing in writing concerning WHIP 360. We therefore consider only Andrus's arguments that WHIP 360 failed to perform as represented on the label and by Champion.

court.  See Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997); Brown v. CSC Logic, Inc., 82 F.3d 651, 653-54 (5th Cir. 1996) (noting that we "may affirm the district court's grant of summary judgment on any ground raised to the district court and upon which both parties had the opportunity to present evidence").

FIFRA creates a comprehensive regulatory scheme for pesticide and herbicide labeling.  See Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 601 (1991).  Under its provisions, all herbicides sold in the United States must be registered with the Environmental Protection Agency (EPA).  See 7 U.S.C. § 136a(a). FIFRA also establishes a complex process of EPA review that culminates in the approval of the label under which the product is to be marketed.  See id. § 136a(c); Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir. 1993).  A pesticide manufacturer must submit a "statement of all claims to be made for" the herbicide as well as directions for its use, its ingredients, and its adverse effects.  7 U.S.C. § 136a(c); see 40 C.F.R. § 152.50 & pt. 156.  The EPA then registers the herbicide if it determines that its composition is such as to warrant the proposed claims for it, that its labeling complies with FIFRA requirements, that it will perform its intended function without unreasonable adverse effects on the environment, and, when used in accordance with widespread practice, that it will not generally cause unreasonable adverse effects on the environment.  See 7 U.S.C. § 136a(c)(5).  Finally, the statute provides that states "shall

not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under" FIFRA.  Id. § 136v(b).

We considered the preemptive effect of FIFRA and § 136v(b) on state common law damage claims based upon a manufacturer's failure to properly label herbicides and warn of dangers associated with their use in MacDonald v. Monsanto Co., 27 F.3d 1021 (5th Cir. 1994).  We determined that the language of the statute, together with the Supreme Court's recent guidance on preemption in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), "leaves no doubt but that the FIFRA term 'any requirements' makes no distinction between positive enactments and the common law."  MacDonald, 27 F.3d at 1024.  Although we recognized that not all common law claims relating to herbicides are preempted by FIFRA--"[section] 136v(b) does not preempt common law that is unconcerned with herbicide labeling, nor does it preempt those state laws concerned with herbicide labeling that do not impose any requirement in addition to or different from the FIFRA requirements"--section 136v(b) does preempt those state laws that "impose or effect different or additional labeling requirements."  Id. at 1024-25 (internal quotation marks omitted).  Because the "undeniable practical effect" of MacDonald's recovering a large damage award on his claims that the manufacturer failed to meet state labeling requirements and failed to warn MacDonald of potential adverse effects would be the imposition of additional labeling standards not mandated by

7

FIFRA, we concluded that such claims are preempted. Id. at 1025.

Our sister circuits have applied a similar test to claims that affect the labeling of a product regulated under FIFRA. For example, the Fourth Circuit considered in Worm whether a plaintiff's claims that a herbicide manufacturer negligently manufactured a herbicide, failed to warn of adverse consequences, and breached express and implied warranties were preempted under FIFRA. See 5 F.3d at 746. The court determined that although

> [t]he line between a claim for mislabeling [that is preempted] and a claim for a defective product [that is not preempted] may not always be clear . . . . [T]he issue may nevertheless be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label.

Id. at 747-48. The court ultimately affirmed the district court's grant of summary judgment in favor of the herbicide manufacturer, noting that "[t]o the extent that the Worms' claims challenge, by whatever state cause of action, the adequacy of information provided by American Cyanamid on its labeling, the claims are preempted by FIFRA." Id. at 749; see also Grenier v. Vermont Log Bldgs., Inc., 96 F.3d 559, 564 (1st Cir. 1996) (holding express warranty claim preempted because "[t]o premise liability on the inaccuracy of the statement [on the label] is in substance to determine that a different statement should have been made in the labeling"); Welchert v. American Cyanamid, Inc., 59 F.3d 69, 72 (8th Cir. 1995) (stating that express warranty claim "based entirely on the label's statement with regard to the herbicide's . . . effect" is preempted); Taylor AG Indus. v.

8

<u>Pure-Gro</u>, 54 F.3d 555, 563 (9th Cir. 1995) ("'[T]o the extent the implied warranty claim depends upon inadequacies in labelling or packaging, FIFRA section 136v pre-empts the claim.'") (quoting <u>Papas v. Upjohn Co.</u>, 985 F.2d 516, 520 (11th Cir. 1993)) (alteration in original).

The magistrate judge found that FIFRA preempts Andrus's performance and detrimental reliance claims because "[i]n every instance the defects alleged [in Andrus's complaint] are linked to the specifications set forth in the label." We agree with the magistrate judge's analysis, but we conclude that Andrus's claim that AgrEvo breached its implied warranty of fitness for a particular purpose is similarly preempted. <u>See</u> <u>Taylor AG Indus.</u>, 54 F.3d at 563 (stating that "an implied warranty of fitness for a particular purpose also constitutes a state law requirement and is preempted by FIFRA" to the extent it depends on inadequacies in labeling or packaging). Andrus claims in his complaint that WHIP 360 "failed to perform as specified pursuant to the label" and that Andrus "relied to his detriment on the specifications pursuant to the Whip 360 product label." Furthermore, Andrus argues on appeal that his claims are based "on the failure of Whip 360 to perform as advertised on its label." Andrus's claims are obviously based on the contents of the WHIP 360 label, and any adverse judgment would have the "undeniable practical effect" of imposing additional labeling standards on AgrEvo.

Andrus attempts to save his claims from preemption by arguing that they are also based on the failure of WHIP 360 to

9

perform "as selected and recommended by [AgrEvo's] corporate representative, Jeff Champion." Andrus relies on an affidavit that he attached to his response opposing AgrEvo's motion for summary judgment in which Champion states that he recommended that Andrus apply WHIP 360 "as an effective control for the spr[a]ngletop problem" and Andrus's deposition testimony that Champion stated that WHIP 360 "would handle our problem."

Andrus "cannot automatically avoid FIFRA preemption simply because [he] challenge[s] alleged misrepresentations that were made separately from the label." Kuiper v. American Cyanamid Co., 131 F.3d 656, 662 (7th Cir. 1997). The Seventh Circuit held that even off-label statements are preempted if they merely repeat information contained in the label. See id. at 662-63. The court found that

> [a]ccording to the Fourth Circuit, when advertising or promotional materials merely repeat information or language contained in the label, claims directed at the advertising necessarily challenge the label itself and are therefore preempted. The Ninth and Eleventh Circuits go farther, holding that "any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging" and therefore are preempted. Under both approaches, FIFRA preempts state law claims when the challenged advertising merely reiterates the label. The difference is that the Fourth Circuit holds that FIFRA allows state law claims against advertisements that "substantially differ" from the label, while the Ninth and Eleventh Circuits hold that FIFRA preempts these claims as well.

Id. (citations omitted).

We do not need to choose between the two approaches outlined in Kuiper because we determine that Andrus's evidence failed to

raise a genuine issue of material fact suggesting that Champion's advice differed from the contents of the WHIP 360 product label. The WHIP 360 label states that WHIP 360 is for use in controlling "annual and perennial grassy weeds in rice," and includes a table recommending an appropriate quantity for use against sprangletop. Because Andrus introduced no evidence demonstrating that Champion provided any advice not contained on the WHIP 360 product label, Andrus cannot rely on this advice to avoid preemption under FIFRA.  Thus, the magistrate judge properly granted AgrEvo summary judgment on all of Andrus's claims.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment.