**DOW AGROSCIENCES, LLC, Plaintiff,**

v.

**Dennis BATES, et al., Defendants.**

No.  Civ.A. 5:01–CV–331–C.

United States District Court,
N.D. Texas,
Lubbock Division.

June 3, 2002.

Fernando M. Bustos, McCleskey Harriger Brazill & Graf, Lubbock, TX, Frank L.

Hill, Thompson & Knight, Austin, TX, Dean T. Barnhard, Barnes & Thornburg, Indianapolis, IN, for plaintiff.

John E. Simpson, Splawn & Simpson, Lubbock, TX, Phil Watkins, Law office of Phil Watkins, San Antonio, TX, for defendants.

## ORDER

CUMMINGS, District Judge.

On this day the Court considered Plaintiff's Motion for Summary Judgment filed March 13, 2002. Defendants filed a Response to Plaintiff's Motion to Dismiss on April 2, 2002. Plaintiff filed a Reply on April 19, 2002 After considering all relevant arguments and evidence, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

## I.

## BACKGROUND

Plaintiff, Dow AgroSciences, manufactures pest management and biotechnology products. Plaintiff introduced Strongarm in the spring of 2000. Strongarm is used as a preemergence herbicide to control certain weeds in peanuts. Plaintiff began receiving demand letters from individual peanut growers (Defendants) contending that Strongarm was "highly toxic" and failed to control the weeds in their peanut crops. The Defendants also contended that Plaintiff misrepresented the product and that the misrepresentations constituted false, misleading, and deceptive acts and practices. In addition, Defendants alleged false advertising, breach of warranty, and statutory claims for alleged deceptive and fraudulent trade practices. Defendants' demand letters demanded payment from Plaintiff for certain dam-

ages, including consequential and incidental damages, treble damages, and attorneys' fees and expenses. On December 21, 2001, Plaintiff brought suit seeking declaratory judgment.

## II.

### STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotations omitted). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. FED.R.CIV.P. 56(e); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir.1996) (en banc); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*

## III.

### DISCUSSION

Plaintiff filed this suit in an effort to have the Court determine the parties' rights and obligations under the applicable federal law. Plaintiff contends that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") expressly preempts all of Defendants' claims against Plaintiff. Defendants assert that their claims are not expressly preempted by FIFRA.

FIFRA creates a comprehensive regulatory scheme for pesticide and herbicide labeling. *See Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 601, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). Under its provisions, all herbicides sold in the United States must be registered with the Environmental Protection Agency ("EPA"). *See* 7 U.S.C § 136a(a). FIFRA also establishes a complex process of EPA review that culminates in the approval of the label under which the product is marketed. *See* 7 U.S.C. § 136a(c). A pesticide manufacturer must submit a "statement of all claims to be made for" the herbicide as well as directions for its use, its ingredients, and its adverse effects. *See* 7 U.S.C. § 136a(a). The EPA then registers the herbicide if it determines that its composition is such as to warrant the proposed claims for it, that its labeling complies with FIFRA requirements, and that it will perform its intended function without unreasonable adverse effects on the environment. *See* 7 U.S.C. § 136a(c)(5). In an

effort to preserve uniformity of laws concerning labeling, FIFRA provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under" FIFRA. *See* 7 U.S.C. § 136v(b). Section 136v(b) preempts those state laws that impose or effect different or additional labeling requirements. *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir.1994) The express language of FIFRA clearly indicates that Congress intended that the federal act preempt conflicting state law, including state common law tort claims. *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir.1994).

■ Plaintiff's first assertion is that FIFRA expressly preempts Defendants' alleged breach of implied warranty claims. Defendants on the other hand claim that FIFRA does not preempt their implied warranty claims because these claims are not based on inadequacies in labeling. Defendants claim that the alleged breach of implied warranty claims arise from field day projects sponsored by Plaintiff. Defendants allege that at the field day projects, they were told that Strongarm was an excellent herbicide to use for weed control on West Texas Peanuts. The Court finds that FIFRA preempts Defendants' breach of implied warranty claims because "[i]n every instance the defects alleged [by Defendants] are linked to the specifications set forth in the label." *Andrus v. AgrEvo USA Co.,* 178 F.3d 395, 399 (5th Cir.1999). Defendants attempt to avoid FIFRA preemption because they "challenge misrepresentations that were made separately from the label." *See Andrus,* 178 F.3d 395, 400

(quoting *Kuiper v. American Cyanamid Co.,* 131 F.3d 656, 662 (7th Cir.1997)). Defendants' argument fails as Defendants have failed to raise a genuine issue of material fact suggesting that the advice and statements made at the field day projects differed from the contents of the Strongarm product label. The implied warranty claims are preempted by FIFRA because they challenge the Strongarm label.

■ Plaintiff also asserts that FIFRA preempts Defendants' alleged breach of express warranty claims. Defendants claim that because express warranties are not a requirement imposed by a state, they are not preempted under FIFRA. However, premising liability on the inaccuracy of a statement on the label is in effect challenging the label, and FIFRA preempts any claim that directly or indirectly challenges the sufficiency of the label. The express warranty claims are preempted by FIFRA because they challenge the Strongarm label.

■ Additionally, Plaintiff claims that Defendants' alleged breach of implied and express warranty claims are foreclosed by Strongarm's label provisions. Strongarm's label provisions specifically disclaim any implied warranties and provide a limited express warranty.[1] In Texas, the UCC provides for the exclusion or modification of warranties. Tex.Bus. & ComCode Ann. § 2.316(b) (Vernon 2000). Section 2.316(b) provides as follows:

> (b) Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the lan-

---

1. Strongarm's label provides as follows: "Dow AgroSciences warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes stated on the label when used in strict accordance with the directions, subject to the inherent risks set forth below". Dow AgroSciences MAKES NO OTHER EXPRESS OF IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER EXPRESS OR IMPLIED WARRANTY.

guage must mention merchantability and in case of a writing it must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example "there are no warranties which extend beyond the description on the face hereof".

Whether a disclaimer is conspicuous or not is a question of law. Section 1.201(10) of the Texas Business and Commerce Code states that "a term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals is conspicuous." TexBus. & Com.Code Ann. § 1.201(10) (Vernon Supp. 2002). Strongarm's label provision excluding any express or implied warranty meets the letter of the Texas UCC and thus is enforceable. Tex.Bus. & ComCode Ann. § 2.316(b); 2.316(b), (c) (Vernon 2000). Assuming *arguendo* that Defendants' claims for an alleged breach of express and implied warranties were not preempted by FIFRA, the claims would be foreclosed by Strongarm's label provisions. Plaintiff's Motion for Summary Judgment on Defendants' breach of implied and express warranty claims is **GRANTED**.

■ Plaintiff contends that Defendants' Deceptive Trade Practices Act and Fraud claims are preempted by FIFRA because these claims ultimately challenge the Strongarm label. Plaintiff claims that Defendants' DTPA and fraud claims are in essence misrepresentation through advertising claims which are challenges to the Strongarm label. Defendants deny that their DTPA and fraud claims are predicated solely on advertisements. Defendants assert that their claims arise from the representations made by Plaintiff's retail distributors and employees who conducted

the field day projects and who instructed Defendants about the uses of Strongarm and from promotional advertising by Plaintiff. Defendants claim that their DTPA and fraud claims are based on the representations and promises made by Plaintiff's authorized local retail distributors and representatives.

Controlling Fifth Circuit law establishes that FIFRA preempts claims that rely on advertising and marketing materials as the basis for their DTPA and fraud claims. *Andrus,* 178 F.3d at 400. Specifically, the Fifth Circuit has held that FIFRA preemption cannot be avoided "simply because [he] challenge[s] alleged misrepresentations that were made separately from the label." *Andrus,* 178 F.3d at 400 (citing *Kuiper v. American Cyanamid Co.,* 131 F.3d 656, 662 (7th Cir.1997)). Defendants state that their claims arise from representations made by Plaintiff's retail distributors and employee representatives who conducted field day projects and "held meetings with the Defendant growers instructing them about the uses of Strongarm, how to apply it, extolling its excellent results in west Texas soils with west Texas weeds and from promotional advertising" by Plaintiff. Defendant has offered no evidence that these "off-label" remarks were different from the information contained in the Strongarm label. *See Andrus,* 178 F.3d at 400 (citing *Kuiper,* 131 F.3d at 662–63). Off-label remarks are preempted when they merely repeat the information on the label. *See id.* These remarks Defendants complain of merely repeat the information contained on the Strongarm label; therefore, FIFRA preempts these claims.

■ Defendants also complain about statements made by Plaintiff's employee representatives who examined the Defendants' fields and advised them that the peanuts would grow out of the problem

and that Plaintiff would pay the growers for any production loss and increased expenses. These off-label remarks do not repeat any information found on the Strongarm label. FIFRA does not preempt these claims. However, the Strongarm label contained a Limitation of Remedies provision. The provision provides as follows:

"The exclusive remedy for losses or damages resulting from the use of this product (including claims based on contract, negligence, strict liability, or other legal theories) shall be limited to, at Dow AgroSciences' election, one of the following:

1. refund of purchase price paid by buyer or user for product bought, or

2. replacement of amount of product used."

Dow AgroSciences shall not be liable for losses or damages resulting from handling or use of this product unless Dow AgroSciences is promptly notified of such loss or damage in writing. In no case shall Dow AgroSciences be liable for consequential or incidental damages or losses.

The Terms of the Warranty Disclaimer above and this Limitation of Remedies cannot be varied by any written or verbal statements or agreements. "No employee or sales agent of Dow AgroSciences or the sell is authorized to vary or exceed the terms of the Warranty Disclaimer or this Limitation of Remedies in any manner."

Section 2.719 of the Texas Uniform Commercial Code provides that parties can limit their liability in damages. Tex-Bus. & Com.Code Ann. § 2.719. The Limitation of Remedies on the Strongarm label complies with the Texas UCC. As such, the alleged statements made by the Plaintiff's employees and representatives do not vary the terms of the Limitation of Remedies. Defendants are limited to the remedies provided in the Limitation of Remedy provision.

■ Plaintiff's final assertion is that Defendants' negligence claims are preempted by FIFRA. Defendants argue that Plaintiff was "negligent in the development, manufacture, production and promotion of Strongarm." In support of their argument, Defendants claim that the affidavit of John M. Brown, Ph.D. demonstrates that Plaintiff was negligent in the design, formulation, manufacture, and promotion of Strongarm in west Texas. In addition, Defendants claim that the fact that Plaintiff changed the Strongarm label for the 2001 peanut season supports their assertion that Plaintiff was negligent in the design, formulation, manufacture, and promotion of Strongarm. Defendants further state that had the 2001 label changes been made in 2000, "the growers would not have used Strongarm and would not have suffered the injuries to their crops that they did." In effect, the Defendants are challenging the Strongarm label. The Defendants' negligence claim is in actuality a failure to warn claim that is preempted. *Cipollone v. Liggett Group,* 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Plaintiff's Motion for Summary Judgement on this point is **GRANTED.**

## IV.

## CONCLUSION

For the reasons previously discussed, Plaintiff's Motion for Summary Judgment is **GRANTED.** All other pending motions are DENIED as MOOT. All relief not expressly granted is **DENIED.**

SO ORDERED.