United States Court of Appeals
Fifth Circuit

**F I L E D**

June 11, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-10908
_____

DOW AGROSCIENCES LLC,

Plaintiff-Appellee

versus

DENNIS BATES; JIMMY BURSON;
BENNY JUDAH, doing business
as Clearwater Farms; TOMMY COLEMAN;
RICHARD COX; ET AL.,

Defendants-Appellants

Appeal from the United States District Court
For the Northern District of Texas

Before GARWOOD and HIGGINBOTHAM, Circuit Judges, and FELDMAN,[*]
District Judge.

FELDMAN, District Judge:

Dow Agrosciences LLC sought a declaratory judgment against 29 Texas peanut farmers whom were threatening to sue Dow for damages caused by a Dow-manufactured herbicide. Dow sought, among other things, a judicial declaration that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 (West 2002), preempts the farmers' state law claims. The

_____

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

1

district court denied the farmers' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and granted Dow's motion for summary judgment, holding that FIFRA preempts the farmers' state law claims.  We affirm.

## I.

Strongarm is a herbicide produced and marketed by Dow to control the growth of weeds in peanuts.  Strongarm is registered with the United States Environmental Protection Agency as required by FIFRA.

In the spring of 2000, many peanut farmers from west and northwest Texas bought Strongarm from local retailers.  Many of these farmers contend that Strongarm stunted the growth of peanut plants, caused yellowing, inhibited peanuts from lapping or properly developing foliage, delayed maturity, reduced total peanut production, and increased the expense of harvesting future peanut crops.

The farmers sent Dow demand letters, claiming that Dow retailers had misrepresented Strongarm.[1]  The letters threatened to sue Dow for false advertising, breach of warranty, and fraudulent trade practices under the Texas Deceptive Trade

---

[1] The farmers contend that the retailers failed to disclose that Strongarm damages peanut crops planted in soil with a pH level above 7.0.

2

Practices Act (DTPA).  See Tex. Bus. & Com. Code Ann. § 17.505(a) (Vernon 2002).

Dow struck first, and sued for declaratory judgment against 29 of the farmers.  Dow sought a declaration that: (1) FIFRA preempts the farmers' state law claims; (2) the "Limitation of Remedies" paragraph on the Strongarm label limited the farmers' remedies to the purchase price of the product; and (3) the "Warranty Disclaimer" paragraph on the label barred any other claims based on a warranty of representation.  The farmers counterclaimed against Dow for negligence, breach of implied and express warranties, fraud, fraud in the inducement, defective design, estoppel, and waiver.

## II.

### A.  Subject Matter Jurisdiction

The farmers first contend that federal diversity jurisdiction did not exist over Dow's lawsuit because three of the farmers' claims failed to meet the $75,000 amount-in-controversy requirement.  28 U.S.C. § 1332(a) (West 2002).  The issue of subject matter jurisdiction is subject to plenary review by this Court.  See Julian v. City of Houston, 314 F.3d 721, 725 (5th Cir. 2002).  As the party invoking diversity jurisdiction, Dow bears the burden of establishing the amount in controversy.  See Hartford Ins. Group v. Lou-Con Inc., 293 F.3d

3

908, 910 (5th Cir. 2002).

When the claim is one for declaratory relief, the amount in controversy is determined by "the value of the right to be protected or the extent of the injury to be prevented." St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252-53 (5th Cir. 1998). The amount claimed by the plaintiff controls "if the claim is apparently made in good faith." Id. at 1253 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).

Dow's complaint for declaratory relief states that the value of each of the individual claims exceeds $75,000. But that bare allegation, by itself, does not invest a federal court with jurisdiction. See Asociacion Nacional de Pescadores v. Dow Quimica, 988 F.2d 559, 566 (5th Cir. 1993). We must therefore ascertain, based on "summary judgment type evidence," whether the amount in controversy requirement has been met. St. Paul Reinsurance, 134 F.3d at 1253.

The farmers point to the claims of Burk Denman, Richard Cox, and Frenchie Lee Wheeler. Their demand letters claim the following damages: Denman, $37,992.50; Cox, $33,227.50; and Wheeler, $18,242.50. All three, moreover, sought an additional $10,000 in attorney's fees. See Hartford Ins., 293 F.3d at 912 (including "attorneys' fees, penalties, statutory damages and punitive damages" in the amount-in-controversy calculation).

The farmers' original damage requests, on their face, do not

4

satisfy the $75,000 requirement; the farmers' actual claims, however, are substantially greater because the DTPA permits a plaintiff to recover the costs of litigation, pre and post-judgment interest, and treble damages.[2]  See Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 2002) (providing for an "award not more than three times the amount of damages for mental anguish and economic damages").

The three farmers' original demand letters did not include claims for punitive damages.  Not only were such damages available to them under the DTPA, but they later sought such damages in their counterclaims.  We agree with the district court that "additional demands for attorneys' fees and punitive damages exalts the total amount in controversy over $75,000."[3]  Thus, federal diversity jurisdiction existed over Dow's lawsuit.

## B.  Abstention

---

[2] The DTPA, however, does not permit the value of attorneys' fees, costs, and prejudgment interest to be included in the treble damages calculation.  See Tex. Bus. & Com. Code Ann. § 17.50(e) (Vernon 2002).

[3] The mere availability of treble damages establishes that Denman's and Cox's claims satisfy the $75,000 requirement.  After trebling Wheeler's request of $18,242.50, and adding his claim for attorneys' fees, Wheeler's potential recovery is only $64,727.50.  After an independent review of the record, this panel agrees with the district court that Wheeler's stated claim of $18,242.50 did not include his claim for future damages.  After future damages are added to the amount of his original claim, Wheeler's total claim meets the $75,000 requirement for federal diversity jurisdiction.

Appellants next urge that the district court should have abstained from taking jurisdiction over Dow's lawsuit. District courts have a broad, but not unfettered, measure of discretion in deciding whether to entertain an action for a declaratory judgment. See Travelers Ins. v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774, 778 (5th Cir. 1993); Torch, Inc. v. LeBlanc, 947 F.2d 193, 194 (5th Cir. 1991). Thus, a grant of declaratory relief is reviewed for abuse of discretion. See Magnolia Marine Transport v. Laplace Towing Corp., 964 F.2d 1571, 1581 (5th Cir. 1992).

While acknowledging the district court's broad discretion to exercise jurisdiction over declaratory judgment suits, this Circuit requires courts to consider various factors, on the record, before abstaining from a declaratory judgment action:

> 1) whether there is a pending state action in which all the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, . . . 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, . . . [and] 7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom parallel state suit between the same parties is pending.

St. Paul Ins. Co. v. Trejo, 39 F.3d 585, 590-91 (5th Cir. 1994).

The district court correctly considered the Trejo factors on the record before opting to entertain Dow's declaratory action.

6

Appellants, however, assert that the <u>Trejo</u> analysis favors abstention because Dow's lawsuit fails to implicate the core purposes of the Declaratory Judgment Act. They mistakenly rely primarily on our decision in <u>Magnolia Marine</u>. 964 F.2d 1571.

In <u>Magnolia Marine</u>, which preceded <u>Trejo</u>, our Court reversed the district court's decision to accept a declaratory judgment action. <u>Id.</u> at 1581. We mandated abstention because the declaratory suit was filed immediately after the defendant conveyed her intent to sue the plaintiffs in state court, and, we said, the plaintiffs initiated the lawsuit "solely to obtain their preferred forum in which to anticipate a defense that they could adequately raise" in state court. <u>Id.</u> at 1581-82.

Dow's first strike seems somewhat similar to the conduct in <u>Magnolia Marine</u>. Dow, too, filed for declaratory relief in anticipation of being sued in state court. Dow engaged in at least some degree of forum shopping.[4]

Against the measure of <u>Magnolia Marine</u>, the first three <u>Trejo</u> factors appear to favor abstention.[5] We nonetheless agree

---

[4] Although Dow chose to lay venue in Lubbock, a place convenient for the farmers, the choice of a federal court was no doubt a strategic one. See <u>American Cyanamid Co. v. Geye</u>, 79 S.W.3d 21, 23 (Tex. 2002).

[5] We assume, <u>arguendo</u>, that the first <u>Trejo</u> factor supports abstention despite the fact that the federal suit was filed first. Pursuant to the statutory notice requirements of the DTPA, the farmers were precluded from bringing a state court action at any time within sixty days from the date the demand letters were mailed, and Dow brought its declaratory judgment action after the farmers had taken the requisite first steps toward bringing a DTPA

7

with the district court that the last three factors clearly instruct against abstention: the resolution of this dispute in a single federal forum furthers the interests of judicial economy;[6] the federal forum does not appear to be inconvenient to the farmers; and the federal court was not asked to construe a state judicial decree involving the same parties as those involved in a parallel, pending state suit.[7] See Trejo, 39 F.3d at 590-91.

Thus, "[i]n light of the breadth of the district court's discretion," Torch, 947 F.2d at 195, and because the weight of the Trejo factors appears to be balanced and to have been properly considered by the district court on the record, we find that the court did not abuse its discretion by entertaining Dow's suit for declaratory judgment.

## C. FIFRA Preemption

---

action.

[6] In Cunningham Brothers, Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969), the Seventh Circuit disregarded the fact that federal court abstention would force the defendant to defend lawsuits in various jurisdictions against a variety of plaintiffs. Id. at 1168-69. The Cunningham panel, however, emphasized repeatedly that the underlying action was one of personal injury. Because the scope of Cunningham appears limited to personal injury actions, and is not a ruling of this Circuit, we find it to be of little persuasion. We find that resolving the farmers' claims in a single federal forum clearly furthers the interests of judicial economy.

[7] It is unclear from the record whether the fourth factor, concerned with inequities gained by a plaintiff's precedence in time, supports abstention.

8

Appellants also contend that the district court erred when it decided, by way of summary judgment, that FIFRA preempted their state law claims. Our review of a district court's grant of summary judgment is de novo. See Young v. Equifax Credit Information Services, Inc., 294 F.3d 631, 635 (5th Cir. 2002).

Preemption analysis proceeds from "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 605 (1991). Preemption may nonetheless occur in one of three ways: it may be expressed by the federal statute, it may be implied from the terms or structure of a federal statute, or it may arise in a situation where a conflict between state and federal regulations makes compliance with both a physical impossibility. See id. The district court found that FIFRA expressly preempted the farmers' state law claims. We agree.

FIFRA is a comprehensive regulatory scheme aimed at controlling the use, sale, and labeling of pesticides. See id. at 601. FIFRA requires, among other things, that manufacturers submit proposed product labels for EPA approval. See 7 U.S.C. § 136a(c)(1)(C) (West 2002).

Section 136v of FIFRA announces:

(a) In General
A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

9

```
(b) Uniformity
Such State shall not impose or continue in effect any
requirements for labeling or packaging in addition to or
different from those required under this subchapter.
```

The Court has addressed the scope of § 136v(b) many times.

See Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000); Andrus v.

Agrevo USA Co., 178 F.3d 395 (5th Cir. 1999); MacDonald v.

Monsanto, 27 F.3d 1021 (5th Cir. 1994).  Our decisions reveal

three clear principles.  First, FIFRA does not completely preempt

all state or local regulation of pesticides.  See Hart, 199 F.3d

at 244 (rejecting an attempt to premise federal question

jurisdiction on a claim of complete preemption).  Second, FIFRA

does not preempt common law that is unconcerned with herbicide

labeling, nor does it preempt those state laws concerned with

herbicide labeling that do not impose any requirement in addition

to or different from the FIFRA requirements.[8]  See Andrus, 178

F.3d at 398; see also Hart, 199 F.3d at 245 ("FIFRA preemption

does not extend to non-labeling state common-law causes of

action.").  Finally, FIFRA preempts state laws that either

directly or indirectly impose different labeling requirements.[9]

_____

[8] It is well-established that the term "any requirements"
encompasses both positive state enactments as well as common-law
causes of action.  See Andrus v. Agrevo USA Co., 178 F.3d 395, 398
(5th Cir. 1999).

[9] For example, different requirements may be imposed when a
court authorizes a damage award against a manufacturer that has the
"undeniable practical effect" of inducing a manufacturer to alter
the product or label to avoid liability.  See MacDonald v.
Monsanto, 27 F.3d 1021, 1025 (5th Cir. 1994).  It is this mandate

10

See MacDonald, 27 F.3d at 1025.

The district court found that each of the farmers' state claims were preempted under § 136v(b) because they constituted "requirements for labeling and packaging in addition to those required under" FIFRA.[10]  Appellants advance two arguments against preemption.  First, they contend that state labeling requirements related to product effectiveness are not within the scope of FIFRA's express preemption clause.  Second, they assert that their claims are not sufficiently related to the content of the Strongarm label.  We reject each argument.

1)   **State Labeling Requirements Related to Product Effectiveness are Within Scope of FIFRA's Express Preemption Clause**

Appellants urge that their product effectiveness claims, even those which impose a labeling requirement, are not within the scope of FIFRA's express preemption clause.  Their argument suggests that FIFRA preemption of performance-related claims requires the existence of conflicting EPA enactments.

In Cipollone v. Liggett Group, Inc., the Supreme Court held

_____

that is fatal to appellants' argument.

[10] Thus, we first review whether the farmers' claims are expressly preempted by § 136v(b); if FIFRA does not expressly preempt the farmers' claims, it becomes necessary to analyze whether such claims conflict with federal law.

11

that, as long as a federal statute[11] contains an express preemption clause, it is wholly unnecessary and inappropriate to import notions of implied preemption through conflict into the express preemption analysis.[12] 505 U.S. 504, 517, 531-32, 544 (1992)(plurality opinion). Nowhere in FIFRA's text is § 136v(b)'s express preemptive command, or § 136v(a)'s savings clause, linked to the interplay of EPA regulations. 7 U.S.C. § 136 (West 2002); see also Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, 981 F.2d 1177 (10th Cir. 1993)("We believe Congress circumscribed the area of labeling and packaging and

---

[11] Cipollone reviewed the express preemption clause in the Public Health Cigarette Smoking Act of 1969. The Smoking Act of 1969 and FIFRA are strikingly similar. The Tenth Circuit has written, "Although the words employed in § 136v(b) are different from those in § 5(b) of the Cigarette Smoking Act, their effect is the same . . . [and w]e see no difference between the operative effect of the two acts." Arkansas-Platte & Gulf v. Van Waters & Rogers, 981 F.2d 1177, 1179 (10th Cir. 1993). Moreover, the Seventh Circuit also "discern[ed] no significant distinction at all" between the two clauses. Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir. 1993)("Not even the most dedicated hair splitter could distinguish these statements.").

[12] "Where, as here, Congress has included in legislation a specific provision addressing . . . pre-emption, the Court's task is one of statutory interpretation--only to identify the domain expressly pre-empted by the provision. An interpreting court must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. We resort to principles of implied preemption--that is, inquiring whether Congress has occupied a particular field with the intent to supplant state law or whether state law actually conflicts with federal law--only when Congress has been silent with respect to pre-emption." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 532 (Blackmun, J., concurring in part and dissenting in part)(internal quotations omitted).

12

preserved it only for federal law . . . [w]ith the same stroke, Congress banned <u>any</u> form of state regulation, and the interdiction law is clear and irrefutable.")(emphasis added).

Although FIFRA's text does not define the scope of FIFRA's preemption clause to be a function of existing EPA regulations, appellants nonetheless insist that an implied conflict preemption analysis must be imported into § 136v(b).  To support their claim, they rely primarily on the Texas Supreme Court's decision in <u>American Cyanamid Co. v. Geye</u>, which held that the EPA's decision to not regulate product labeling "with respect to how well a product works" meant that "state common-law claims about target area crop damage are not preempted."  79 S.W.3d 21, 23 (Tex. 2002).  The Texas high court reasoned, "EPA regulations define the domain expressly preempted" by FIFRA because Congress gave the EPA the "role of evaluating and determining the content of pesticide labels."  <u>Id.</u> at 24 (citing 7 U.S.C 136w(a)(1) (West 2002))(internal quotation omitted).

We find <u>Geye</u> unhelpful because it did not address the principal issue:  whether the scope of FIFRA's express preemption clause includes product effectiveness claims which relate to product labeling.  <u>Geye</u> holds only that the specific Texas state-law claims for crop damage did not present a problem of conflict preemption under the applicable EPA regulations.  In other words, <u>Geye</u> proceeds from the assumption that the claims at issue did not relate to product labeling and that FIFRA's express

13

preemption clause did not apply.[13]

The scope of FIFRA's express preemption clause is defined by the simple text of § 136v. That the EPA has not elected to impose labeling regulations concerning product effectiveness does not alter the plain meaning of § 136v(b) nor avoid preemption of a claim that has the effect of imposing labeling requirements. For a state to create a labeling requirement by authorizing a claim linked to the specifications of a label, even where the EPA has elected not to impose such labeling requirements, would clearly be to impose a requirement "in addition to or different from those" required under FIFRA. See 7 U.S.C. § 136v(b). Thus, the farmers' claims, including those which challenge Strongarm's effectiveness, are within the scope of FIFRA's express preemption clause if they are related to the content of the Strongarm label.

**2) The Farmers' Claims are Sufficiently Related to the Content of Strongarm Label**

---

[13] That Geye is properly understood as an ordinary conflict-preemption case is evident from two portions of the opinion. First, in the opening paragraphs of its opinion, the Texas court references only the "exception to preemption" clause of FIFRA. American Cyanide Co. v. Geye, 79 S.w.3d 21, 22 (Tex. 2002). By the "exception to preemption" clause, the court was clearly referring to § 136v(a), not to the express preemption clause of § 136v(b). Second, it is also apparent from Part V of its opinion, in which the court appeared to conclude that the underlying claim alleged to be preempted was not a claim "relating directly or indirectly to labeling," see 79 S.W.3d at 29 (distinguishing Quest Chemical Corp. v. Elam, 898 S.W.2d 819 (Tex. 1995)), that the court's opinion did not purport to interpret section 136v(b).

14

The farmers argue that their claims are not related to the Strongarm label. This argument betrays the facts and it betrays common sense. We have observed that FIFRA's express preemption clause is self-executing. Thus, the farmers' claims are expressly preempted under § 136v(b) if a judgment against Dow would induce it to alter its product label. See Andrus, 178 F.3d 395, 399 (5th Cir. 1999) (finding that state law claims that herbicide had "failed to perform as specified pursuant to the label" were preempted by FIFRA because the plaintiff's success on such claims would necessarily have had the effect of "imposing additional labeling standards").

The facts aside for one moment, a claim's relatedness to a product label may be determined simply by reference to the party's pleadings. See id., at 399. Unlike Andrus, where the plaintiff's complaint specifically referenced "specifications set forth in the label," the farmers' counterclaim simply asserts in general that the label did not include a valid disclaimer or limitation of remedies. We, therefore, look at each of the farmers' state claims[14] to determine whether a judgment against Dow would cause it to need to alter the Strongarm label. See MacDonald, 27 F.3d at 1024 ("[C]ourts must compare the particular

---

[14] Although the farmers asserted breach of contract in their counterclaim, they failed to address this issue in their brief. Thus, any objection related to the district court's finding of preemption regarding breach of contract is waived. See Oden v. Oktibbeha County, Miss., 246 F.3d 458, 470 n.12 (5th Cir. 2001).

15

language of a statute's preemption provision with each common law claim asserted to determine whether the common law claim is in fact preempted.").

### a) Breach of Warranty, Fraud and DTPA

The farmers base their breach of warranty, fraud, and DTPA claims on misleading comments made by Dow retailers.  Claims for breach of warranty based upon an "off label" representation are preempted by FIFRA only if the representation deviates from the contents of the product label.  See Andrus, 178 F.3d at 399.  Success on such an "off label" claim would provide a manufacturer with a strong incentive to alter its label to avoid future liability.  See id.

The district court found that the farmers failed to establish a genuine issue of material fact that the Dow retailers' comments differed or strayed in any material manner from the contents of the Strongarm label.[15]  After reviewing the record, we agree with the district court.  Thus, the farmers' warranty claims are preempted under § 136v(b).  See id. at 400 (refusing to overturn a grant of summary judgment on a defense of preemption where the plaintiffs failed to establish that the

---

[15] The district court held that one pre-sale representation by Dow retailers deviated from the content of the Strongarm label. The court found that the representation, however, was controlled by the label's "Limitation of Remedies" provision.  The farmers' do not seek appellate review of the district court's application of the "limitation of remedies" provision.

16

representations forming the basis of the claim differed from the contents of the FIFRA label).

The farmers' fraud claims, based upon the same "off label" statements by Dow representatives, are subject to an identical analysis.  Because no evidence was presented demonstrating that the retailer statements deviated from the contents of the Strongarm label, the fraud claims are similarly preempted by § 136v(b).

The DTPA does not create a warranty; rather, it establishes a remedy for the breach of an independent warranty.  See Centex Homes v. Buecher, 95 S.W.3d 266, 269 (Tex. 2002).  Because the only warranty at issue is based upon these "off-label" comments, the farmers' success on a DTPA action would also induce Dow to alter its label.  The DTPA claim is thus necessarily preempted by FIFRA § 136v(b).


### b) Defective Design

Defectively manufactured or designed products properly labeled under FIFRA are generally subject to state regulation. See Netland v. Hess & Clark, Inc., 284 F.3d 895, 899 (8th Cir. 2002).  Dow, however, correctly contends that the farmers' defective design claim is merely a disguised claim for failure to warn.  See Grenier v. Vermont Log Buildings, Inc., 96 F.3d 559, 564 (1st Cir. 1996) ("[M]erely to call something a design or

17

manufacturing defect claim does not automatically avoid FIFRA's explicit preemption clause."). One cannot escape the heart of the farmers' grievance: Strongarm is dangerous to peanut crops in soil with a pH level over 7.0, and that was not disclosed to them.

In Netland, the Eighth Circuit evaluated a FIFRA preemption defense to a strict liability claim. See Netland, 284 F.3d at 899. The Netland court found that the plaintiff's expert testimony was insufficient to establish a design defect, and that the claim was obviously more directed to deficiencies in the EPA-approved label. See id. at 900-01.

Netland is a good guide for us. The farmers' counterclaim presents a straightforward design defect claim, that Strongarm was unreasonably dangerous at the time it left Dow's control. Nonetheless, the farmers did not claim that Strongarm is unreasonably dangerous for use on all peanut crops; rather, they asserted that Strongarm is dangerous when applied to crops in soil with high pH levels. See Grenier, 96 F.3d at 565 (finding plaintiff's claim that a product was defectively designed because it was foreseeable that it would be used in a particular way "is effectively no more than an attack on the failure to warn against [that] use and therefore is a preempted claim").

We find that the farmers' strict liability counterclaim is functionally a disguised claim for failure to warn. It is inescapable that success on this claim would again necessarily

18

induce Dow to alter the Strongarm label.  The district court did not err in ruling that FIFRA expressly preempts the farmers' defective design claim.

### c)  Negligence

The farmers also maintain that Dow was negligent in the testing, manufacture, and production of Strongarm.  They overlook that a negligent testing claim is, as a matter of Texas law, a variation of an action for failure to warn.  See American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 437 (Tex. 1997).  We agree with the district court that the farmers' negligent manufacture claim was, again, simply a disguised claim for failure to warn and is preempted by § 136v(b).

## III.

Each of the farmers' claims exceeded the $75,000 statutory requirement for federal diversity jurisdiction.  Moreover, the district court conducted a proper Trejo abstention analysis.  Given that the balance of the Trejo factors does not appear to point clearly toward abstention, we find that the district court did not abuse its discretion by entertaining the declaratory judgment action.  We reiterate that, because FIFRA's express preemption clause is self-executing, FIFRA preemption of performance-related state law claims is not dependent upon the

19

existence of conflicting EPA regulations.  Moreover, the farmers' claims for breach of warranty, fraud, DTPA, defective design and negligence are all preempted by FIFRA's express preemption clause because success on such claims would necessarily induce Dow to alter its product label.  AFFIRMED.